**Robert DAVILA, Appellant,**

v.

**Rita DAVILA, Appellee.**

**No. S–5551.**

Supreme Court of Alaska.

Dec. 29, 1995.

Allison E. Mendel, Mendel & Huntington, Anchorage, for Appellant.

Kathleen C. Barron, Wasilla, for Appellee.

Before MOORE, C.J. and RABINOWITZ, MATTHEWS, COMPTON, JJ., and BRYNER, J., pro tem.*

*OPINION*

BRYNER, Justice, pro tem.

This divorce case returns to us following a remand to the superior court for reconsideration and additional findings on the issue of spousal support.

In *Davila v. Davila*, 876 P.2d 1089 (Alaska 1994), we affirmed the trial court's valuation of marital property. *Id.* at 1092–93. As to spousal support, we upheld the trial court's finding that Rita Davila left the marriage with vastly inferior job skills and earning power than Robert Davila and concluded that "[t]his is precisely the 'economic impact of divorce' which AS 25.24.160(a)(2) directs the trial court to consider in awarding spousal support." *Davila*, 876 P.2d at 1095. We

* Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

likewise held that the record supported the trial court's finding that the parties had insufficient liquid assets to allow this disparity to be balanced through the allocation of marital property alone. *Id.*

However, we found that the trial court's findings with regard to spousal support failed to specifically account for either Rita's financial needs or Robert's financial needs and ability to pay. *Id.* We also found that the trial court had failed to explain sufficiently its decision, on reconsideration, to substitute an increased amount of reorientation alimony for its initial award, which provided for a combination of reorientation and rehabilitation alimony. *Id.* We further questioned the trial court's failure on reconsideration to provide for Rita to receive a fifty percent share of Robert's military retirement pay during the four-year period of spousal support. *Id.* at 1096 n. 4.[1]

Concluding that "[t]he trial court's failure to address [these] issues with specificity in its findings precludes informed appellate review by this court of the disputed alimony award," we retained jurisdiction over the appeal and remanded for reconsideration and additional findings. *Id.* at 1096, n. 5. On remand, the trial court entered additional findings and reinstated its original order awarding Rita both reorientation and rehabilitative alimony. *Davila v. Davila*, Additional Findings on Remand (Aug. 12, 1994)

(Superior Ct. No. 3PA–91–1014 DR). We must now consider whether the additional findings support this award.

Having reviewed the trial court's additional findings with regard to its decision on remand to reinstate the award of $284 per month for four years as rehabilitative alimony, we hold that the trial court's findings are supported by the evidence, and we affirm its decision to reinstate rehabilitative alimony.

With regard to reorientation alimony, the trial court's additional findings on remand are problematic in two respects.

 First, the trial court's additional findings do not explain or justify the court's failure to award Rita an equal share of Robert's net military retirement pay (approximately $283.30) during the first four years of the divorce—the period covered by the award of reorientation alimony. Reorientation alimony is ordinarily appropriate only to the extent that marital property cannot be divided in a way that provides for the parties' needs.[2] The record in this case indicates that $283.30 of the $560.60 monthly reorientation alimony that the trial court ordered on remand could have been provided for by awarding Rita half of Robert's net military retirement beginning at the inception of the divorce, rather than upon termination of the four-year period of alimony.[3] The award of

---

1. The original award of spousal support called for Rita to receive $284 monthly in rehabilitative alimony for four years and $566.60 monthly in reorientation alimony, also for four years. The $566.60 per month the trial court established as reorientation alimony was the same as Robert's net monthly military retirement pay, and the court ordered that Rita receive the reorientation alimony directly from the military. After four years, Robert's net retirement pay was to be divided equally between the parties.

In a motion for reconsideration, Robert asserted that the simultaneous award of both rehabilitative and reorientation alimony was impermissible. Rita, in a separate motion for reconsideration, pointed out that 10 U.S.C. § 1408(e)(1) precluded an assignment to her of more than fifty percent of Robert's net retirement pay. The trial court's order on reconsideration eliminated rehabilitative alimony and awarded Rita monthly reorientation alimony payments of $800 for two years and $700 for an additional two years. The court vacated its original order requiring that the

reorientation alimony be paid from Robert's military retirement pay. The court did not award Rita any portion of Robert's retirement pay during the initial four years when the alimony payments were to be made. However, it left intact its original order requiring that Robert's military retirement pay be divided equally after four years.

2. *See Davila*, 876 P.2d at 1094, (citing *Richmond v. Richmond*, 779 P.2d 1211, 1215 n. 6 (Alaska 1989)).

3. On remand, although the trial court reinstated its original award of both reorientation and rehabilitation alimony, it did not reinstate the original provision requiring that the $566.60 in reorientation alimony be paid from Robert's military retirement. However, the court again left intact the provision of its original order that Robert's retirement pay be divided between the parties only after the four-year period of alimony payments ended. Hence, Rita's $566.60 monthly reorientation alimony award continues to reflect

reorientation alimony thus amounts to an abuse of discretion to the extent it incorporates $283.30 per month that could have been awarded as part of the property division.

■ Second, the trial court's findings on remand fail to justify the court's decision to order reorientation alimony for a period of four years. As we observed in our original opinion, reorientation alimony is essentially transitional and may be awarded for brief periods to provide support pending the sale of marital property or to enable a spouse "to get a job appropriate to the spouse's *existing* skills." *Davila*, 876 P.2d at 1094 n. 3 (emphasis added). Here, the trial court's award of four years of reorientation alimony extends well beyond the time reasonably necessary to enable Rita to sell the family home, and the record does not support the trial court's conclusion that the level of reorientation alimony it awarded is necessary to allow Rita to obtain adequate housing after the family home is sold. Moreover, Rita was already employed at a job appropriate to her existing skills. Furthermore, the record fails to support the trial court's conclusion that the level of reorientation alimony it awarded is necessary to allow Rita to continue paying for housing after the family home is sold.[4]

In our original opinion, we noted that, given the transitional purposes of reorientation alimony, "it is difficult to imagine circumstances under which an award of reorien-

tation alimony extending for longer than one year would be justified." *Id.* Neither the trial court's original findings nor its additional findings on remand set forth exceptional circumstances supporting more than one year of reorientation alimony. We therefore conclude that the trial court abused its discretion in awarding reorientation alimony of more than one year's duration.

Accordingly, the award of spousal support, as provided for by the trial court on remand, is AFFIRMED in part and REVERSED in part. This case is REMANDED to the trial court with directions to modify the award in conformity with this decision.[5]

---

an actual monthly value to her of $283.30 over what she would be entitled to receive under an equal division of Robert's net military retirement pay. The same result could be achieved by simply awarding Rita fifty percent of Robert's net military retirement pay from the inception of the divorce and reducing the amount of reorientation alimony by $283.30.

4. As Robert correctly points out, assuming that the sale of the home netted Rita $17,000, this sum of money, conservatively invested at five percent interest, would enable Rita to make monthly payments of $391 for four years—a sum significantly greater than the $283.30 benefit Rita would derive from the trial court's award of reorientation alimony, considering that the award must be discounted to reflect money that Rita is entitled to receive as her share of Robert's military retirement pay. Assuming, as the trial court evidently did, that the net monthly benefit of $283.30 Rita receives from the reorientation alimony would be adequate to tide her over until

she sold the family home, it is unclear why this alimony would remain necessary after the home's sale.

5. Specifically, the trial court, upon remand, should modify the judgment by (1) reducing the amount of monthly reorientation alimony to $283.30; (2) reducing the duration of the reorientation alimony to one year; and (3) amending the property division to award Rita fifty percent of Robert's net military retirement pay as of the inception of the divorce, rather than upon termination of alimony payments. To determine the current status of support payments, the trial court should calculate the total amount of military retirement pay and reorientation and rehabilitative alimony that Rita would be currently due under the modified judgment if the modified judgment had been in effect at all pertinent times; from this sum, the court should subtract all previous payments of spousal support actually made by Robert in accordance with the trial court's prior spousal support orders.