**A. John GALLANT, Appellant,**

**v.**

**Shannon L. GALLANT, now known as Shannon Weed, Appellee.**

No. S–7497.

Supreme Court of Alaska.

Sept. 12, 1997.

---

A. John Gallant, pro se, Anchorage.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

John Gallant appeals from a judgment of the superior court resolving a number of claims in a family law proceeding. We affirm in part and reverse in part.

### II. FACTS AND PROCEEDINGS

John Gallant and Shannon Weed were married in 1975. They have three children, John Jr., born in 1976, Joshua, born in 1977, and Carli, born in 1981. They separated in 1988 and were divorced in 1991.

John and Shannon ultimately agreed that John would have custody of Joshua and Carli, while Shannon's sister would have custody of John Jr. However, the parties failed to resolve issues of child support, division of assets and liabilities, and reorientation alimony. Following a trial on these issues, the superior court divided the marital assets equally, but assigned all of the marital debt to John. The court also awarded five years of reorientation alimony to Shannon and denied John's request for attorney's fees.

John appealed. This court remanded the case for further findings concerning the determination of John's adjusted income, allocation of the debt, the amount and duration of reorientation alimony, and the failure to award attorney's fees. *Gallant v. Gallant,* 882 P.2d 1252, 1254–55 (Alaska 1994).

On remand, the superior court entered additional findings supporting its prior decision. The superior court also ruled on several matters which had arisen following the initial trial, including disputes concerning past child support and interim spousal support payments. This appeal followed.

## III. DISCUSSION

### A. The Superior Court Erred by Reducing Shannon's Child Support Payments without Entering Supporting Findings.

#### 1. Standard of review

John first claims that the superior court made several errors in calculating Shannon's child support obligations. "The standard for reviewing a child support award is whether the trial court abused its discre-

tion." *Murphy v. Murphy,* 812 P.2d 960, 962–63 (Alaska 1991). An abuse of discretion exists if the reviewing court forms "a definite and firm conviction based on the record as a whole that a mistake has been made." *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1191 (Alaska 1987).

#### 2. The superior court erroneously reduced Shannon's support payments by 100% during visitation periods.

Under Alaska Civil Rule 90.3(a)(3), "[t]he court may allow the obligor parent to reduce child support payments up to 50% for any period in which that parent has extended visitation of over 27 consecutive days."[1] Commentary IV.B. indicates that the trial court may reduce the payments by more than 50% "for good cause," but that "[t]he court must specify in writing the reason for the variation." Alaska R. Civ. P. 90.3(c)(1) & Commentary IV.B.

Following the first trial, Joshua and Carli each visited Shannon for several periods in excess of twenty-seven days. On remand, the superior court reduced Shannon's child support payments by 100% for each of these periods. The court provided no explanation for this variation from the 50% presumptive maximum contained in Civil Rule 90.3(a)(3), stating only that Shannon had supported the children while they visited her.[2] We conclude that the superior court erred, because it reduced Shannon's support obligation by more than 50% without providing any reason for its variation from Rule 90.3(a)(3). Accordingly, the payments for the relevant periods must be reduced by 50% instead of 100%.[3]

---

**1.** This credit is limited to 50% in order to reflect the fact that the obligee parent's "fixed costs such as housing will not decrease" during visits. Alaska R. Civ. P. 90.3 Commentary IV.B.

**2.** Shannon contends that "[t]aken as an entire document, the findings of fact and conclusions of law adequately set forth the reasoning for the trial court's decision." The superior court did make findings regarding the income disparity between John and Shannon. The parties' respective support obligations reflect that disparity. Findings that an income gap existed are insufficient by themselves to justify all deviations from the rules, especially when the basic support

award already had taken that disparity into account. Shannon's contention lacks merit.

**3.** Shannon argues that the court should treat any error in this regard as *de minimis,* since the amount at stake for each child for each year is approximately $100. *See Wickwire v. City & Borough of Juneau,* 557 P.2d 783, 786 (Alaska 1976) (Boochever, J., dissenting) (arguing that claim should be dismissed as *de minimis* ). This claim fails. According to Shannon, the alleged error resulted in a total claim in excess of $600. This amount, while not significant, exceeds the amount at stake in *Wickwire,* which this court refused to dismiss as *de minimis.*

3. *The superior court erred by reducing Shannon's support payments by 100% for periods in which Joshua resided in medical facilities.*

 In the years following the first trial, Joshua spent several significant periods receiving treatment in medical facilities. The treatment was financed by the health insurance of the parties. The superior court reduced Shannon's payments by 100% for each of these periods, on the ground that she had "fully provided for the support of Joshua during those days" through her insurance. These reductions were in error.

 No case squarely addresses the effect of a child's extended hospitalization on a parent's support duties. However, Civil Rule 90.3 is designed not only to ensure that the obligor parent bears a fair share of the support burden, but also to ensure that the obligee parent is reimbursed for necessary support expenses.[4] Health care costs aside, an obligee's expenses should not be affected any differently when a child is absent from his or her home in order to obtain treatment than when the child is absent for a visit with the other parent. As is the case with visitation, "[t]he spouse with primary custody ... will have somewhat lower expenses during [the child's absence] even though that parent's fixed costs such as housing will not decrease." Alaska R. Civ. P. 90.3 Commentary IV.B. Moreover, the obligor parent is less likely to "spend significant funds directly for the children" during hospital stays than during visits, assuming that health care costs

are covered by the insurance that parents must maintain for their children under Civil Rule 90.3(d). *Id.* Since an obligee parent may suffer a reduction in child support payments of up to 50% during extended visits with the obligor parent under Civil Rule 90.3(a)(3), it is not unjust to the obligee to reduce the obligor's payment to the obligee by 50% during periods of extended hospitalization. Such a reduction is something of a windfall to the obligor, for the assumption of Civil Rule 90.3(a)(3) is that the obligor will pay the board and associated expenses of the child during extended visits. This is not the case during periods of hospitalization. As a result, hospital stays should have a smaller impact on an obligor's child support payments than visits with the obligor would have. Thus, Shannon should not ordinarily be entitled to a reduction of a full 50% of her child support obligation during such periods. It follows that the superior court erred by reducing her payments by 100% in the absence of supported findings. These payments therefore must be reduced by at least 50% instead of 100%, in accordance with the views expressed herein.[5]

4. *Although the superior court prematurely denied John's motion for post-majority support, that denial qualifies as harmless error.*

 John also challenges the superior court's denial of his motion to extend[6] child support for Joshua beyond Joshua's eighteenth birthday.[7] The superior court could

---

4. If support payments followed only the amount an obligee parent actually expends in support of the children, Civil Rule 90.3 would permit a 100% payment reduction during visits, since the obligee will often provide full support for the children during such periods. The fact that Civil Rule 90.3 does not do so indicates that support payments are at least as closely related to the obligee's fixed expenses, such as housing, as to the obligor's actual expenses during visits. *See* Alaska R. Civ. P. 90.3 Commentary IV.B.

5. The superior court's treatment of 1992 merits particular attention. In that year, Joshua spent over 200 days in treatment. The superior court credited each party with half of the time Joshua spent in treatment, and awarded child support for this year as for shared physical custody. Alaska R. Civ. P. 90.3(f)(1) ("A parent has shared

physical custody ... if the children reside with that parent for a period specified in writing of at least 30 percent of the year."). While the court's approach was unusual, it appears to be a reasonable solution to the problem of awarding support in this anomalous year. As a result, the court's action concerning this year did not constitute an abuse of discretion.

6. Modification of a support order is proper upon a material and substantial change in circumstances. *See Burrell v. Burrell*, 696 P.2d 157 (Alaska 1984). John's motion rests on a claim that his continued support of Joshua, over a period during which he remained in school, would qualify as such a change.

7. AS 25.24.140(a)(3) allows a court, under "appropriate circumstances," to award post-majori-

have denied that motion on the merits, if it made the requisite findings.[8] However, the superior court denied the motion, and awarded attorney's fees against John, without permitting him to reply to Shannon's opposition to that motion or her accompanying request for attorney's fees. While this action constituted error, that error was harmless.

Under *Bowman v. Blair*, 889 P.2d 1069 (Alaska 1995), it is error to award attorney's fees before the opposing party has an opportunity to respond. *Id.* at 1075. Such error is prejudicial, and therefore grounds for reversal, if, as a matter of law, the opposing party could have prevailed on the issue. *Id.* The same logic that bars ruling on a motion before the opposing party has a chance to respond applies to a ruling before a party can file a reply, albeit with less force.[9]

Here, as in *Bowman*, the court erroneously granted Shannon's request for attorney's fees, without considering any response from John. The superior court should have considered John's reply before ruling on the motion. The timing of the ruling may have prejudiced John, since he presented evidence supporting Joshua's eligibility for support in his motion for reconsideration, which apparently was absent from his original motion.

However, while the superior court erred by ruling on the motion prematurely, that error was harmless. John's motion for reconsideration apprised the court of the additional information and arguments he would have presented in his reply. The refusal of the court to grant reconsideration indicates that the court's decision was not altered by that material. As noted, that decision did not constitute an abuse of discretion. Moreover, John has not challenged the award of attorney's fees on appeal, arguing only that "[d]enial of the request for ongoing support was plain error." The superior court's pre-

mature decision therefore did not result in prejudice to John.

B. *The Superior Court Properly Refused to Permit John to Deduct the Expenses of His Closely Held Corporation from His Net Income.*

John argues that the court erroneously refused to permit him to deduct from his calculation of net income expenses from a closely held corporation. Determination of net income is a question of fact and is reviewed under the clearly erroneous standard. *See Brosnan v. Brosnan*, 817 P.2d 478, 480 (Alaska 1991). A factual finding will be deemed clearly erroneous if the reviewing court is "left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding." *Id.* (quoting *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979)).

The Commentary to Civil Rule 90.3 permits those with income from closely held corporations to deduct "ordinary and necessary expenses required to produce the income." Alaska R. Civ. P. 90.3 Commentary III.B. Such deductions may not include "any other business expenses determined by the court to be inappropriate." *Id.* This deduction is intended to apply to closely held corporations that serve as an income source of the party in question. The deduction is not available in the case of corporations which effectively serve as tax or income shelter devices. John's primary income stemmed from his wages as a corrections officer, rather than from his closely held corporation. Indeed, John has not presented any evidence that he has ever realized any income at all from the closely held corporation. The superior court therefore did not err by refusing to permit John to deduct from his net income

---

ty support for "unmarried 18–year–old children of the marriage who are actively pursuing a high school diploma or an equivalent level of technical or vocational training and living as dependents with the spouse."

**8.** Neither the statute nor case law suggests that a court automatically abuses its discretion if it refuses to modify support in any particular case

where a child meets the criteria for continued support. Shannon's financial plight could provide a sound basis for denial of continued support in this instance.

**9.** Since a replying party has already had an opportunity to present the party's case in the initial motion, a reply is less crucial than an opportunity to oppose a motion.

expenses incurred in the name of that corporation.

### C. The Superior Court's Findings Were Adequate to Support an Award of Extended Spousal Support.

██ John also challenges the amount and duration of the superior court's award of "reorientation alimony."[10] "An award of alimony is within the trial court's discretion and will be set aside only if it is unjust or unnecessary." *Richmond v. Richmond*, 779 P.2d 1211, 1215 (Alaska 1989).[11] While we have frequently reversed lengthy alimony awards, *see, e.g., Davila v. Davila*, 908 P.2d 1025, 1027 (Alaska 1995), we have indicated that, under the right circumstances, AS 25.24.160 would authorize alimony awards with a variety of durations. *See Money v. Money*, 852 P.2d 1158, 1163–64 (Alaska 1993) (approving an alimony award lasting two years); *Hilliker v. Hilliker*, 755 P.2d 1111, 1112 (Alaska 1988) ("Permanent alimony may be awarded when it is 'just and necessary.' ") (quoting AS 25.24.160(3)). In this case, we conclude that the superior court improperly designated the award as "reorientation alimony," but that the award was proper as extended spousal support.

██ The award extends for too long a period to qualify as reorientation alimony. "[R]eorientation alimony is essentially transitional and may be awarded for brief periods to provide support pending the sale of marital property or to enable a spouse to get a job appropriate to the spouse's existing skills." *Davila*, 908 P.2d at 1027 (quotation omitted). "[G]iven the transitional purposes of reorientation alimony, it is difficult to imagine circumstances under which an award of reorientation alimony extending for longer than one year would be justified." *Id.* (quo-

tation omitted). Accordingly, in *Davila* this court overturned an award of reorientation alimony that extended for four years, in the absence of findings which "set forth exceptional circumstances supporting more than one year of reorientation alimony." *Id.* This award, which extends for nearly seven years, similarly would be invalid if analyzed as reorientation alimony.[12]

However, we conclude that the superior court did not err in awarding Shannon extended spousal support. The superior court made extensive findings concerning Shannon's need for extended support following the marriage. In particular, the court found that "Mr. Gallant's present and future earning capacity far exceeds that of Ms. Weed." It determined that John's income earning capacity was not decreased following his separation from Shannon, that his "station in life" had improved following the separation, and that he had excess income of at least $1,000 per month. The court also noted that John was able to maintain "full control of his life after the parties' separation" in part because he had "developed an extensive work history" during the parties' marriage.

In contrast, the court concluded that Shannon had spent significant periods of time out of the job market in order to care for the parties' children and, thus, did not "obtain any meaningful job skills during the marriage." It found that Shannon had expenses that typically exceeded her income and that, although she had found work as a grocery clerk, her income fell far below John's. It also determined that Shannon suffered from a number of health problems, which severely hindered her ability to earn a living and resulted in significant medical expenses. Finally, the superior court noted that Shannon has had to assume significant debts to meet

---

10. This court already has upheld the superior court's conclusion that some amount of alimony was justified. *Gallant*, 882 P.2d at 1255.

11. AS 25.24.160(a)(2) authorizes alimony awards which are "just and necessary." A court must consider "a number of statutory and case law factors" to determine whether an award of alimony is appropriate in a given case. *Gallant*, 882 P.2d at 1255.

12. This court upheld a multi-year award in one pre-*Davila* case. *See Money v. Money*, 852 P.2d 1158, 1163–64 (Alaska 1993) (finding that a two-year reorientation award was acceptable "to aid the plaintiff while she is preparing to enter the job market" and "to help her organize her portion of the marital estate assets"). However, the award in this case extends for more than three times the duration of the award in *Money* and strains the concept of an award for a "brief period."

her medical expenses and that she sometimes has been unable to afford needed medication.

These findings provide ample support for the superior court's conclusion that Shannon required significant support for an extended period. John's challenge to the award therefore fails, despite the superior court's mischaracterization of that award as reorientation alimony.

D. *The Superior Court Did Not Err by Awarding Relocation Costs and Interim Support Payments to Shannon.*

On remand, the superior court awarded Shannon unpaid relocation expenses and interim spousal support arrearages, in accordance with an earlier order. John challenges this award as an erroneous factual finding by the superior court.[13]

The original order awarded Shannon $2,000, to be paid from the proceeds of the trailer sale. However, the order provided no guidance in the event that the sale of the trailer did not generate sufficient funds to meet that obligation. The superior court apparently interpreted the order as granting Shannon an award of $2,000, to be met by John if the sale proceeds proved insufficient. The superior court's interpretation of the order is as reasonable as John's view, under which Shannon was awarded only the proceeds of the trailer sale, rather than a set amount of $2,000. John has presented no evidence that he had in fact paid the additional relocation costs, which would be appropriate under the superior court's interpretation of the order. The superior court's decision therefore was not clearly erroneous.

■■■ John also objects to the superior court's finding that he owed $258 in arrearages for interim spousal support. The original order required John to pay Shannon $350 per month, reduced in $50 increments for every $100 by which Shannon's gross income exceeded $700. In order to induce Shannon to submit pay stubs in a timely manner, if Shannon failed to submit pay stubs for any given month, the court permitted John to

assume that his obligation could be calculated using the highest income level previously provided.

The superior court awarded arrearages for six months in which John failed to pay support. John has not argued that the superior court miscalculated his obligations based on Shannon's actual income. Instead, John contends that he received no pay stubs for these months. He also claims that four of these months followed his receipt of a pay stub indicating that Shannon's income was high enough to relieve him of any duty to pay support for that month. John therefore argues that he owed no support for the months in question.

If Shannon's failure to provide pay stubs estopped her from claiming that her income for the months in question was lower than the highest pay stubs she did provide, John's claim would be correct. However, there is no indication that the original order was intended to operate in that fashion. To the contrary, the order permitted John to "assume" that his obligations for months in which he received no pay stub could be calculated with reference to the highest prior stub, in order to provide Shannon with an incentive to submit pay stubs in a timely fashion. The superior court did not indicate that Shannon would waive her right to eventual payment if she failed to send pay stubs, although it is clear she would lose the ability to demand timely payment. Shannon was not estopped from collecting support based on her actual income, and the superior court did not err by allowing her to collect such support.

E. *The Superior Court Did Not Abuse Its Discretion by Allocating the Entire Marital Debt to John.*

■■■ Following remand, the superior court assigned the entire marital debt of $8,600 to John as part of the division of

**13.** Since this claim involves interpretation of the original order, it might be viewed as a question of law rather than a question of fact. If so, it would be subject to *de novo* review. However, since the superior court's interpretation of the order was correct, the result would not change were we to apply that standard of review.

marital property.[14] John objects to that division. The court's division of marital property is reviewed for an abuse of discretion and reversed only if "clearly unjust." *See Richmond,* 779 P.2d at 1213. The factors to be considered include "the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; [and] their financial circumstances." *Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962). Consideration of these factors reveals no error in allocation of the debt to John.

The superior court assigned the entire debt to John in part because he was "the party with the greater earning capacity" and thus "more likely to meet the debt allocated to him." This decision was based on a number of factual findings, including conclusions that John's station in life had improved following the separation; that Shannon had "struggled financially" after the separation; that her earning capacity fell far below John's; and that her earning capacity and financial stability were both compromised by serious health problems. The court also found that John "was directly responsible for creating the debts and keeping [Shannon] in the dark about them." This conclusion is supported by findings that John had incurred debts without Shannon's knowledge and controlled the family's finances during the marriage. These findings address the factors outlined in *Merrill,* and therefore provide adequate support for the superior court's conclusion. Since the noted evidence does not give rise to "a definite and firm conviction based on the record as a whole that a mistake has been made," the superior court did not abuse its discretion by assigning the entire debt to John. *Lone Wolf,* 741 P.2d at 1191.

### F. *The Superior Court Did Not Err by Refusing to Award Attorney's Fees to John.*

Finally, John challenges the superior court's refusal to award attorney's fees to him, and its attendant failure to find that Shannon had acted in bad faith during the litigation. "The award of attorney's fees in a divorce action is committed to the sound discretion of the trial court ... [and] will not be disturbed on appeal unless it is arbitrary, capricious, manifestly unreasonable, or stems from an improper motive." *Notkin v. Notkin,* 921 P.2d 1109, 1114 (Alaska 1996) (citations and quotations omitted). "The relevant considerations in awarding fees in a divorce action are the 'relative economic situation and earning power of each party.'" *Musser v. Johnson,* 914 P.2d 1241, 1243 (Alaska 1996) (quoting *Streb v. Streb,* 774 P.2d 798, 803 (Alaska 1989)). "A court may also award attorney's fees where 'a party has acted in bad faith or engaged in vexatious conduct.'" *Id.* (quoting *Kowalski v. Kowalski,* 806 P.2d 1368, 1373 (Alaska 1991)).

The superior court's refusal to find that Shannon had engaged in bad faith or vexatious conduct did not constitute error. "[M]ere evasiveness in responding, contentiousness over difficult issues, or delay in completing discovery do not, in themselves, constitute bad faith or vexatious conduct." *Kowalski v. Kowalski,* 806 P.2d 1368, 1373 (Alaska 1991). "Conduct justifying an increased award must be such that the parties are prevented from litigating the action on an equal plane." *Id.* John challenges a number of Shannon's actions. However, he has not shown that those actions prevented him from litigating the matter on an "equal plane." While Shannon's actions might be adequate to support a finding that she engaged in bad faith conduct, the evidence is insufficient to compel the conclusion that she did so. As a result, the superior court's finding that she had not acted in bad faith was not error.[15]

14. Two pensions, the only significant assets, were divided evenly after adjusting for prior withdrawals by John.

15. John also contends that the court erred by failing to consider new evidence regarding this issue upon remand. "Ordinarily, a remand for additional findings does not obligate the trial court to hear new evidence." *Murray v. Murray,* 856 P.2d 463, 466 (Alaska 1993) (holding that decision to receive new evidence on remand lies within trial court's discretion). Since no evidentiary hearing was called for, and since John had an opportunity to present evidence on this issue

Absent a finding of bad faith, the superior court's award did not constitute error. The superior court concluded that John's earning power exceeded Shannon's, and that his economic situation was the more favorable of the two. This conclusion is supported by a number of findings concerning the yearly income and financial position of each party. Accordingly, the superior court did not abuse its discretion by refusing to award attorney's fees to John.

and income calculation. The judgment of the superior court regarding these issues is REVERSED as noted above. In all other respects,[16] however, the decision of the superior court is AFFIRMED.

## IV. CONCLUSION

The superior court erred in its resolution of several issues concerning child support

at the original trial, the superior court did not abuse its discretion regarding this issue.

16. At several points, John contends that the proceeding was "tainted" by the informality of the judge. However, neither John's listed points on appeal nor the substantive arguments within his opening brief provide any discussion of this issue. As a result, we will not consider arguments concerning a "taint" in the proceedings.