**Tom BENSON, Appellant,**

v.

**Kitty BENSON, Appellee.**

**No. S-8241.**

Supreme Court of Alaska.

April 23, 1999.

---

Jody Patrick Brion, Leutwyler, Brion & Associates, Anchorage, for Appellant.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE and BRYNER, Justices.

## OPINION

PER CURIAM.

## I. INTRODUCTION

In this appeal from a child support collection action, Tom Benson argues that the trial court retroactively modified his child support arrearages in reducing arrearages to judgment. Although the court retrospectively calculated the amount of support Tom owed during a period in which no support order was in effect, we find that the trial court did not retroactively modify child support arrearages. Tom also argues that the superior court lacked authority to establish a trust as security for future child support payments. However, we conclude that the trial court's creation of the trust was authorized by statute and justified on the facts presented.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Elizabeth Benson was born on November 16, 1980, to Tom and Kitty Benson. The parties separated several years later, and Kitty began receiving public assistance on behalf of Elizabeth. In September 1986 the Child Support Enforcement Division (CSED) issued a notice and finding of financial responsibility, requiring Tom to pay $657 per month in support. This amount was based on the child's needs rather than Tom's income because Tom failed to provide income information necessary for calculating his support obligation under Civil Rule 90.3.

Kitty subsequently filed for divorce. In its March 28, 1989 order, the superior court found the prior administrative support order unfair despite Tom's failure to provide income information. The court ordered CSED to recalculate the amount of past due support for the years 1985, 1986, and 1987 based upon the income tax returns Tom had filed with the court, with fifteen percent added to the adjusted gross income. The court ordered the fifteen percent adjustment because it found that Tom had deducted personal expenses from his business income, thereby under-reporting his disposable income. The court ordered Tom to submit copies of his 1988 tax returns to enable CSED to calculate support for 1988. For 1989, the court established monthly support at $100, subject to court review after a more permanent visitation plan was suggested by the guardian ad litem. The court required Tom to keep accurate, detailed records of his income and all personal and business expenses.

In December 1989 CSED moved for relief from the March 28, 1989 order because the order failed to specify a support amount for 1990 onward. In response, the superior court issued an order in February 1990 clarifying its previous order. The court reiterated that child support for 1985 through 1988 was to be based on Tom's tax returns with the fifteen percent adjustment due to Tom's improper deductions of personal expenses. The court explained that child support for 1989 was set at $100 per month. The court clarified its earlier order as follows: "It appears that no set amount of child support has been determined for 1990. Pursuant to this order, CSED is authorized to administratively set child support amounts for January 1, 1990, and until such time as the minor is no longer required to be supported."

Pursuant to this order, CSED contacted Tom by mail in March 1990, requesting his tax returns and guidelines affidavits for the years 1985 to 1988. Tom did not forward the requested material to CSED. In October 1994 CSED again requested that Tom provide tax returns and guidelines affidavits, and Tom again failed to respond. Around this time, CSED learned of Tom's impending inheritance from his father's estate in California.

In November 1994 CSED moved to reduce Tom's child support arrearages to judgment in order to attach a portion of his California inheritance. In calculating the amount, CSED employed the court-ordered amounts for 1985 through 1987. CSED used the 1987 figure for 1988 because Tom never provided his 1988 tax return. The court set support

for 1989 at $100 per month. For 1990 onward, CSED tentatively set support at $368 per month, the amount of 1987 support. CSED also moved for a sanction order, requesting that the court impute to Tom an adjusted annual income of $60,000 due to his refusal to provide the information necessary to calculate his support obligation.

The trial court granted CSED's motions and entered a judgment of $42,268.72 based on the initial figure of $368 per month. The court also granted CSED's motion for sanctions and ordered Tom to pay $1,000 per month from April 25, 1989, onward. Tom appealed, and in an unpublished opinion this court vacated the orders and judgments due to procedural defects. The case was remanded to the trial court for further proceedings.

## B. *Procedural Background*

In August 1996, following remand, CSED requested the court to set a briefing schedule and hold a hearing on CSED's motion to reduce arrearages to judgment. CSED filed an updated affidavit and audit which included the two years that had elapsed while the case was pending on appeal. CSED again based its accounting for 1990 forward on the 1987 support amount of $368 per month. CSED also moved the court to establish a trust funded with Tom's inheritance as security for future child support payments.

Prior to the hearing, Tom filed affidavits and exhibits with the court. Claiming that the $368 monthly obligation did not accurately reflect his ability to pay, Tom provided tax returns and affidavits showing minimal income from 1985 onward.

At the first hearing on December 6, 1996, CSED explained why it had used the $368 per month figure for 1990 onward. Although CSED believed this figure actually understated Tom's ability to pay, it offered to use the amount in the interest of efficiency. Tom continued to contest the $368 monthly obligation, arguing that it overstated his ability to pay. In light of the dispute, the court set a discovery schedule for complete disclosure of Tom's income information back to 1990.

A final hearing was held on May 19, 1997. In preparation, CSED submitted evidence indicating that Tom was significantly underreporting his income to CSED and the court. For example, although Tom reported a net income of only $8,007 in 1994, CSED traced deposits of approximately $166,000 to Tom's bank account during that year. Tom attempted to characterize the inconsistency as a probable mistake by the bank, but he was unable to identify any errors upon reviewing the bank records. Tom was also unable to satisfactorily explain how he subsisted on a reported income of only $2,000 to $10,000 per year. For example, Tom testified that in 1992 he managed to pay all of his living expenses from cash in his wallet, but would not identify the source of the cash realistically necessary to subsist on for an entire year.

On June 3, 1997, the superior court issued its order. The court found "that Mr. Benson has carefully avoided his obligation of support, and he has demonstrated no regard for the welfare of his child." The court found that support had not been established, either judicially or administratively, for 1990 onward. The court found that "CSED was unable to determine Mr. Benson's support obligation because he was not cooperative in providing information regarding his income."

The court then determined the amount of Tom's adjusted income for 1990 onward for the purpose of calculating child support under Rule 90.3. The court rejected the financial information presented by Tom, concluding that his income tax returns were not credible, his testimony was non-responsive and contradictory, and that he had failed to keep detailed, accurate income and expense records despite the March 28, 1989 court order requiring him to do so. Although recognizing that imputing income for the purpose of calculating child support is disfavored, the court found that its only option was to impute income based on CSED's estimates from Tom's bank records. The court set Tom's income and support per month as follows:

| Year | Income | Support |
|------|--------|---------|
| 1990 | $ 11,084.02 | $ 185 |
| 1991 | $ 9,703.93 | $ 162 |
| 1992 | $ 3,837.65 | $ 50 |
| 1993 | $ 59,851.00 | $ 997 |
| 1994 | $140,301.95 | $1,000 |
| 1995 | $ 35,539.00 | $ 592 |
| 1996 | $ 72,000+ | $1,200 |

Because Tom's income was erratic from year to year, the court averaged the last three years to determine his on-going support, arriving at a support obligation for 1997 onward of $930 per month.

At the court's request, CSED provided an updated audit and a proposed order and judgment based on the support amounts set by the court. Pursuant to the court order, CSED gave Tom credit for all payments made through CSED or which Kitty acknowledged receiving.

On June 27, 1997, the court granted CSED's motion to reduce arrearages to judgment and entered judgment against Tom in the amount of $78,207.74 for arrearages accruing through June 5, 1997. The court also granted CSED's motion to establish a trust, with a corpus of not more than $15,810, as security for future child support payments. Under the order, the trust was to be funded with the proceeds from the California probate estate which remained after satisfaction of the judgments against Tom for past due child support. The court also awarded CSED attorney's fees in the amount of $6,055.20. Tom appeals the court's order.

## III. DISCUSSION

### A. Did the Trial Court Retroactively Modify the Child Support Arrearages?

Tom argues that the trial court and CSED violated Civil Rule 90.3(h)(2) by retroactively modifying his child support arrearages for the years 1990 to 1994. This argument lacks merit.[1]

Regardless of whether a support order exists, "[a] parent is obligated both by statute and at common law to support his or her children." *Crayton v. Crayton,* 944 P.2d 487, 489 (Alaska 1997) (quoting *Matthews v. Matthews,* 739 P.2d 1298, 1299 (Alaska 1987)) (alteration in original). If no support order is in effect during a relevant period, the amount of the obligation must be calculated under Rule 90.3. *Id.* at 489–90. If no support order existed for the relevant time period, "applying Rule 90.3 under these circumstances does not modify any existing arrearage." *Id.* at 490 (quoting *Vachon v. Pugliese,* 931 P.2d 371, 382 (Alaska 1996)).

Tom's argument hinges upon the faulty premise that a child support order was in effect for the period of 1990 to 1994. In the February 1990 order, the superior court clarified the terms of its March 1989 child support order in three respects. First, the March 1989 order provided a formula by which CSED was to calculate a child support award for the years 1985 through 1988, and authorized such support to be reduced to judgment. Second, under the March 1989 order, "[c]hild support was set at $100.00 per month *for the year 1989.*" (Emphasis added.) Third, and central to resolution of this issue, the court explained that "[i]t appears that no set amount of child support has been determined for 1990" in the March 1989 order. Recognizing the lapse of the earlier child support order, the court therefore authorized CSED "to administratively set child support amounts for January 1, 1990, and until such time as the minor is no longer required to be supported." Thus, as clarified by the trial court in February 1990, the March 1989 child support order expired by its terms at the end of 1989, and CSED was to issue administrative support orders for 1990 onward.

CSED never administratively set support for 1990 and beyond. As CSED explains in its brief, statutory procedures must be followed in issuing administrative support orders. Most notably, CSED must initiate the process by serving the obligor with a notice and finding of financial responsibility stating the amount of arrearages and prospective monthly payments for which he has been found responsible. *See* AS 25.27.160(a), (b)(1). The obligor may request a hearing within thirty days to show cause why the

---

1. The retroactive modification issue presents two questions of law. The first is the proper interpretation of a court order, to which this court applies its independent judgment. *See Johnson v. Siegfried,* 838 P.2d 1252, 1254 (Alaska 1992). The second involves the legal effect of monthly statements mailed by CSED to obligor parents. In reviewing such questions, this court exercises its independent judgment and adopts the rule of law that is most persuasive in light of precedent, reason, and policy. *See Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (1979).

finding should be modified if the amount of support is allegedly incorrect. *See* AS 25.27.160(b)(3)(B), (b)(4). If the obligor fails to request a hearing within thirty days, his property and income are subject to execution in the amounts stated in the finding without further notice or hearing. *See* AS 25.27.160(b)(4). Since CSED never initiated administrative proceedings by sending Tom a notice and finding of financial responsibility, a new support order could not have been issued after the March 1989 order lapsed.

CSED blames Tom for its inability to administratively determine and issue a support order for 1990 onward. CSED maintains that it never received income information from Tom despite repeated requests for that information. Michele Wall, a child support enforcement officer, affied that CSED requested tax returns on March 29, 1990, and again on October 25, 1994, to no avail. Tom later testified that he did receive mail from CSED during the period in question. Moreover, when Tom did submit income information to the court, he gave non-responsive and contradictory testimony regarding his tax returns, leading the court to conclude that the returns "are not credible to determine his income for Rule 90.3 calculation purposes."

The court's finding was based in part on two instances. In 1992 Tom claimed an income of $2,000. When questioned about how anyone could survive on $2,000 per year, Tom admitted that no one could. When questioned further, Tom indicated that he lived by using cash from his billfold, but would not satisfactorily identify the source of the cash. In 1994 Tom claimed $8,007 in income, but had made deposits of $166,338.95 during the same year. When questioned about the inconsistency, Tom suggested that the bank had mistakenly recorded his deposits multiple times, but he could identify no error after reviewing the bank records. Tom's hesitance to cooperate was undoubtedly a substantial factor in CSED's failure to issue a support order for the years 1990 to 1994.

Despite its failure to establish a support order for the period of 1990 to 1994, CSED continued to send Tom monthly statements indicating that he owed $100 per month in child support. Tom erroneously equates these monthly statements with support orders, but they were not. A support order must be obtained through the use of appropriate judicial or administrative processes.

A contrary holding would reward recalcitrant conduct by obligors, as the facts of this case illustrate. Because of CSED's failure to administratively set support for 1990 onward, the monthly statements sent to Tom merely reflected the amount due under the last valid support order—$100 per month for 1989 as established by the March 1989 order. But CSED's failure to issue a new support order was attributable largely to Tom's resistance to disclosing financial information. If a monthly statement were held the legal equivalent of a support order, an obligor could unreasonably maintain his support at an artificially low level by withholding information necessary for calculation of the proper support amount.

In conclusion, the trial court and CSED did not retroactively modify Tom's child support arrearages for 1990 to 1994 because a child support order was not in effect during this period. The March 1989 order had lapsed by its own terms, CSED had not administratively issued a new support order, and the monthly statements issued by CSED were not the equivalent of support orders.

B. *Did Laches, Waiver, or Estoppel Bar the Retrospective Calculation of Child Support?*

 Tom argues alternatively that the equitable defenses of laches, waiver, and estoppel prohibited the retrospective calculation of child support for the years 1990 to 1994 because he relied on the monthly statements issued by CSED. These arguments lack merit.[2]

 First, the equitable defense of laches is not applicable to child support collection actions because the dispute is legal rather than equitable in nature. *See State, CSED v. Valdez,* 941 P.2d 144, 152 (Alaska 1997).

---

2. The availability of equitable defenses in child support collection actions presents a question of law which this court reviews de novo. *See State, CSED v. Gerke,* 942 P.2d 423, 425 (Alaska 1997).

Tom attempts to distinguish between calculating the amount of arrearages and reducing arrearages to judgment, arguing that the former is barred by the doctrine of laches while the latter is not. The purported distinction is not persuasive, however. In the absence of a valid support order, arrearages cannot be reduced to judgment without first calculating the amount of support owed during the relevant time period.

■ Second, the defenses of waiver and estoppel are unavailable in this case. "Where CSED is acting on behalf of the custodial parent to collect child support which is then passed through to that parent, CSED's conduct cannot amount to waiver or estoppel. The right to support is that of the child and thus cannot be waived by CSED." *Valdez*, 941 P.2d at 154 n. 14. In this case, CSED maintains that Kitty has not received public assistance since January 1988, and that all arrearages due from February 1988 onward are owed directly to the custodial parent. To the extent this assertion is correct, the defenses of waiver and estoppel are inapplicable since the time period at issue is 1990 to 1994.[3]

In conclusion, the equitable defenses of laches, waiver, and estoppel are unavailable in this case.

C. *Did the Trial Court Have Authority to Create a Trust as Security for Future Child Support Payment?*

Upon CSED's motion, the trial court ordered Tom's inheritance to be paid to CSED and held in trust as security for future child support payment. Tom argues that the trial court lacked authority for granting this remedy. CSED argues that creation of the trust as security for payment of future child support was authorized by AS 25.27.060(c).[4]

Alaska Statute 25.27.060(c) provides:

In a court proceeding where the support of a minor child is at issue, the court may order either or both parents to pay the amount necessary for support, maintenance, nurture, and education of the child. The court shall issue a medical support order as part of a child support order if health care coverage is available to the obligor at a reasonable cost. The court shall consider whether the child is eligible for services through the Indian Health Service or other insurance coverage before ordering the obligor to provide health care coverage through insurance or other means. The medical support order must meet the requirements of AS 25.27.063. *Upon a showing of good cause the court may order the parents required to pay support to give reasonable security for payments.*

(Emphasis added.) CSED argues that the last sentence of AS 25.27.060(c) provides authority for establishing a trust as security for future payment of child support. Tom argues that the reasonable security provision only modifies that part of AS 25.27.060(c) concerning medical support, and does not concern general child support. The reasonable security provision, however, is not limited by its own terms to medical support, but instead applies broadly to "parents required to pay support." As used in AS 25.27.060(c), "support" encompasses all forms of child support, including general support for "maintenance, nurture, and education of the child" as

---

3. To the extent that the assertion may be incorrect, and CSED is attempting to collect upon an assigned claim for public assistance, the defenses of estoppel and implied waiver may apply against CSED. *See State, CSED v. Valdez*, 941 P.2d 144, 154 n. 14 (Alaska 1997). A factual question would exist as to whether Tom's reliance on the representations in the monthly statements was reasonable. In such a case, Tom may have difficulty proving that his reliance on the monthly statements was reasonable given that he never responded to CSED's request for income information in CSED's attempt to issue a new support order, while nevertheless admitting that he received mail from CSED between 1990 and 1994.

4. The issue of whether AS 25.27.060(c) authorizes the court to establish a trust as security for child support payment involves a question of statutory interpretation to which this court applies its independent judgment. *See University of Alaska v. Tumeo*, 933 P.2d 1147, 1150 n. 6 (Alaska 1997). The question of whether good cause was shown for establishment of reasonable security involves a question of fact which will not be set aside unless clearly erroneous. *See Gallant v. Gallant*, 945 P.2d 795, 800 (Alaska 1997).

well as specific support for health care coverage.

The remaining questions concern application of the reasonable security provision to the facts of the instant case. Tom argues first that good cause was not established, and second that a trust is not "reasonable security." Neither argument has merit.

■ With respect to good cause, Tom asserts that he has made "consistent child support payments over the years" and has "fully cooperated with CSED in its quest to establish his child support obligation." The record in this case belies these factual assertions, however. On March 28, 1989, Judge Andrews made numerous findings regarding Tom's reluctance to pay child support. One finding was that he made no child support payments after separation from Kitty nor any voluntary payments while the case was in the courts. Another was that Tom disregarded court orders and would only minimally comply with what was necessary to achieve his goals unless he was given strong direction from the court.

Eight years later, on June 3, 1997, Judge Wolverton made similar findings regarding Tom's recalcitrance. Judge Wolverton found that Tom "has carefully avoided his obligation of support, and he has demonstrated no regard for the welfare of his child." Due to the lack of credible income information supplied by Tom, and his "non-responsive" and "contradictory" testimony regarding such information, Judge Wolverton was forced to impute income for purposes of calculating child support under Civil Rule 90.3. Our own review of the record indicates that sufficient evidence supports these findings, and that they are not clearly erroneous. Given these findings regarding Tom's unwillingness to pay child support, good cause was shown that security for future child support payment was justified.

■ Tom next argues that creation of a trust is not "reasonable security" within the meaning of AS 25.27.060(c). Tom argues that "[r]easonable security is best provided by a bond or surety, not in the *taking* of the obligor's money, which is the result of ordering a trust." While a bond or surety may

constitute reasonable security, a trust comprised of inheritance proceeds is reasonable security for child support payment as well. If Tom remains current on his child support obligations and does not accumulate arrearages, the funds held in trust will be returned to him after his child's emancipation, less the costs of maintaining the trust account. If Tom disregards his support obligation, the principal and interest accruing in the trust account will be used to wholly or partially satisfy that obligation. As the ability to recover the trust funds depends entirely on Tom maintaining child support payments, the security established by the trial court is reasonable.

## IV. *CONCLUSION*

The judgment of the superior court is AFFIRMED.