Isabel BOWMAN, re: In the matter of the Estate of Francisco X. Monge, Appellant,

v.

Crystal BLAIR and William Riley Blair, Appellees.

No. S–5328.

Supreme Court of Alaska.

Feb. 17, 1995.

Marie Isabel Bowman, pro se.

Paul W. Paslay, Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Isabel Bowman claims the superior court erroneously failed to order Crystal Blair to return items of personal property Bowman alleged were owned by Bowman's adult son, Francisco Monge, at the time Monge died intestate.

## II. FACTS AND PROCEEDINGS

Monge and Blair began dating in August 1990. Monge moved into the Blair household later that year.[1] Monge lived with the Blairs intermittently until approximately two or three weeks before his death in September 1991.

After Monge's funeral, Monge's mother, Bowman, attempted to collect from Blair various items Bowman believed had belonged to Monge. Although Blair surrendered numerous items, Bowman believes that Blair improperly retained some of Monge's belongings. After unsuccessfully attempting to collect these additional items, Bowman filed an "Affidavit and Order for Collection of Personal Property of the Decedent." Bowman, accompanied by a police officer, delivered a copy to Blair, who refused to deliver the disputed items to Bowman.

---

1. The Blair household consisted of Crystal Blair and her parents, William Riley Blair and Dorothy Blair.

Probate Master John Duggan presided over a protracted hearing in 1992 to decide the ownership of the following disputed items: (a) Alpine car stereo; (b) Cobra car alarm; (c) sleeper cover for a truck; (d) steering wheel; (e) Kawasaki jet ski; (f) Nakamichi mini receiver, tape and compact disc player, two two-way component speakers and twelve-inch pro series sub woofer; (g) two leather jackets; (h) one pair of new tennis shoes and other clothing belonging to Monge; (i) $1,450 in cash; (j) emerald necklace, rubies and diamond ring; and (k) approximately one hundred compact discs.

The probate master issued a report which contained specific findings regarding the disputed items and concluded that Bowman had failed to meet her burden of proving that the disputed items had belonged to Monge at the time of his death. The probate master recommended that "no order for deliver[y] of specific personal property of the decedent be entered at this time in favor of Ms. Bowman."

Superior Court Judge Brian C. Shortell adopted the probate master's findings and recommendations in their entirety and entered an order consistent with the master's report. When Blair moved for an award of attorney's fees, the probate master recommended that Bowman be required to pay $2,950, fifty percent of Blair's actual attorney's fees, pursuant to Alaska Civil Rule 82. The superior court adopted the recommendation.

Bowman appeals both the probate master's findings and the superior court's order regarding the disputed items. She also appeals the award of attorney's fees. We affirm the superior court's order with regard to all of the disputed items except for the Cobra car alarm, which we reverse and remand for proceedings consistent with this opinion. We also remand the issue of attorney's fees.

## III. DISCUSSION

### A. Burden of Proof

Bowman argues that the probate master erred in ruling that she bore the burden of proof as to all of the disputed items. According to Bowman, Blair had the burden of proof because Blair's claim that Monge gave her some of the items amounted to an affirmative defense. Bowman argues that she "established a prima facie case by showing that the items were owned [by Monge] prior to and at the time of [Monge's] death," and that therefore the burden of proof shifted to Blair to prove that Monge had given the items to her.

Bowman's argument is unpersuasive. Bowman did not prove that Monge owned the items at the time of his death; she simply established that Monge had owned some of them at some point prior to his death.[2] Under AS 13.16.685, Bowman had the burden of proving that she has a right to the disputed property, not merely the burden of establishing a prima facie case.[3] There is a distinction between the burden of *proof* and the burden of *producing evidence*. Although the burden of *producing evidence* may have shifted to Blair with respect to her claim that the items were gifts, the burden of *proof* remained with Bowman throughout the trial.[4]

---

**2.** Bowman argues that Blair's assertion that some of the disputed items were, in fact, gifts constitutes an affirmative defense. In *Rollins v. Leibold*, 512 P.2d 937, 940 (Alaska 1973), we stated:

An affirmative defense can generally be defined as new matter not set forth in the complaint which constitutes a defense; or new matter which, assuming the complaint to be true, is a defense to it.

In her complaint, Bowman asserted that the disputed items belonged to Monge at the time of his death. Blair contested Bowman's claims of Monge's ownership. In doing so, Blair contested a matter asserted in the complaint and did not assume the complaint to be true. Therefore,

Blair's assertions did not amount to an affirmative defense.

**3.** AS 13.16.685, regarding collection of personal property of a decedent, provides in part:

If any person to whom an affidavit is delivered refuses to pay, deliver, transfer, or issue any personal property or evidence of it, it may be recovered or its payment, delivery, transfer, or issuance compelled *upon proof of their right in a proceeding brought for the purpose by or on behalf of the persons entitled to it.*
AS 13.16.685 (emphasis added).

**4.** *See Chism v. Steffens*, 797 S.W.2d 553, 558 (Mo.App.1990) ("The burden of evidence may

Therefore, the probate master correctly concluded that throughout the proceeding, Bowman bore the burden of proving that (1) Monge owned the contested property items at the time of his death; (2) the property was in the possession or control of the Blairs; and (3) the Blairs refused to return the items upon being presented with Bowman's affidavit.

## B. *Findings Regarding Specific Items*

### 1. *Alpine Car Stereo*

■■■■ The probate master found that the Alpine car stereo was a gift from Monge to Blair and that Bowman failed to prove Monge's ownership at the time of his death. This finding is not clearly erroneous as it was supported by Blair's testimony.[5] Blair testified that when Monge sold his Chevy Blazer,

"he said he was planning on buying a new car and a new stereo system … and he said 'I want to put this in your truck for you.' " Blair also testified that Monge showed the installed car stereo to his friends and said "Look what I did for my girlfriend." Therefore, the probate master's finding that Bowman failed to prove ownership was not clearly erroneous.[6]

### 2. *Sleeper Cover*

The probate master found that Blair bought the sleeper cover on an installment basis and that although Monge paid one installment payment toward Blair's balance, he never owned or claimed an ownership interest in the cover and never requested or expected repayment from Blair for his con-

shift to the defendant with respect to the defendant's claim of gift, but the burden of proof remains throughout the trial with the plaintiff."); *Lappin v. Lucurell*, 13 Wash.App. 277, 534 P.2d 1038, 1044 (1975) ("When plaintiff as administratrix sued the defendants on what she claimed was a loan made to them by the decedent before his death, and where there was no real issue other than whether the money was a loan or a gift, it was error to instruct the jury that defendants had the burden of proving that the money was a gift."); *Estate of Robinson v. Morris*, 51 Ill.App.2d 307, 201 N.E.2d 248, 250 (1964) ("the burden of proof—as distinguished from the burden of going forward with evidence—always remained with the plaintiff"); *Adams v. Gilmore*, 82 Ohio Law Abs. 425, 161 N.E.2d 553, 554 (App.1959) ("The burden of proof was, under the pleadings, upon the plaintiff to prove the defendant his debtor, and not upon the defendant to prove a gift of money."); *see also* 38 C.J.S. Gifts § 65b (1943).

5. We review the probate master's findings under the clearly erroneous standard of review. *See Estate of Gregory*, 487 P.2d 59, 64 (Alaska 1971) (applying clearly erroneous standard of review to the findings of the master accepted by the superior court). Due regard shall be given to the opportunity of the master to judge the credibility of the witnesses. *See* Alaska R.Civ.P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); *Parker v. Northern Mixing Co.*, 756 P.2d 881, 892 (Alaska 1988) ("it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence"); *Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970) ("great weight must be accorded to the trial judge's experience and to his evaluation of the demeanor testimony").

6. Although the probate master found that Bowman failed to prove Monge's ownership at the time of his death, he also stated that the issue of whether the car stereo should be returned is moot, presumably because the car stereo components were stolen from Blair's vehicle two weeks before she testified at the hearing. Bowman argues that the probate master's conclusion regarding mootness is erroneous because if Blair wrongfully assumed control of the stereo after Monge's death, she should be held to have been a constructive trustee of the item and, thus, liable to Bowman for its value. *See* 76 Am.Jur.2d, Trusts, § 229 (1992) ("A constructive trust may arise where one wrongfully … assumes … control of property of another."); *see also* AS 13.16.685 ("any person to whom an affidavit is delivered [who] refuses to pay, deliver transfer, or issue any personal property … is *answerable and accountable for it* to any personal representative of the estate") (emphasis added).

Although a finding that Blair wrongfully withheld property of a decedent may support imposition of a constructive trust, there was no such finding here. A person "does not wrongfully take possession or assume control of property within the [meaning of the constructive trust] rule where [s]he, in good faith, assumes possession and control of property under a claim of title in [her]self wholly adverse to … that which may turn out to be the true title." 76 Am.Jur.2d, Trusts, § 229. It is evident from the probate master's findings that Blair believed that the disputed items belonged to her. Thus, even if the probate master had ultimately determined that the items belonged to Monge at the time of his death, Blair would not be held accountable for their loss through theft.

tribution. Blair testified that she negotiated the installment contract with the seller and made three installment payments, with the rest to come out of her paychecks in time. Testimony of the seller contradicted Blair's testimony. It is for the trier of fact to resolve such disputes. Given Blair's testimony, we cannot say that the probate master clearly erred.

### 3. Steering Wheel

The probate master found that Blair did not know the current whereabouts of Monge's "rally type" steering wheel, and that although Monge purchased and installed a similar steering wheel in Blair's truck, Bowman did not establish Monge's ownership of the disputed steering wheel. This finding is not clearly erroneous as Blair testified that Monge installed the similar steering wheel in her truck, which Monge drove when he was in town, and that Monge never requested that steering wheel be removed from her truck.

### 4. Jet Ski

The probate master found that Monge purchased the jet ski and gave it to Blair as a birthday present. This finding is not clearly erroneous as Blair and a number of other witnesses testified that Monge presented the jet ski to Blair as a gift at her birthday party.

### 5. Nakamichi Mini Receiver, Tape and Compact Disc Player, Two Two-way Speakers and Twelve-inch Pro Series Sub Woofer

The probate master found that Blair did not assert an ownership interest in the Nakamichi mini receiver, tape and compact disc player, two two-way speakers and a sub woofer, and had no knowledge of their whereabouts, and that Bowman had not established that the items were in Blair's possession or control. This finding is not clearly erroneous as Blair testified that she had no knowledge whatsoever of any Nakamichi stereo system and claimed no ownership interest in it. The probate master also appropriately ordered Blair to return those items

7. Blair disclosed this error to the probate master

to Bowman if Blair were to discover them among her possessions.

With regard to the two two-way speakers, the probate master erroneously grouped these speakers with the Nakamichi stereo system instead of with the Alpine car stereo.[7] However, because the probate master also found that Bowman failed to prove Monge's ownership of the Alpine car stereo at the time of his death, and because the two disputed speakers were part of the car stereo system, the probate master necessarily must have found also that Bowman did not prove ownership of the two two-way speakers. Thus, we affirm the probate master's conclusion that Bowman is not entitled to any of the stereo system components.

### 6. Two Leather Jackets

The probate master found that Blair knew of only one leather jacket. Blair testified that Monge had told her that it had been stolen after he loaned it to a friend. No evidence contradicted that testimony. Consequently the finding was not clearly erroneous. The probate master correctly concluded that Bowman had not proven that Blair had possession of either jacket. This finding is not clearly erroneous as Blair's testimony supports the court's finding. Further, the master appropriately ordered Blair to deliver the jackets to Bowman in the event she learned of their whereabouts (i.e., in the event they ever came into her possession).

### 7. New Tennis Shoes and Clothing

The probate master found that Blair did not have possession of any of Monge's personal clothing or his tennis shoes. Given the testimony of Blair and her father, this finding is not clearly erroneous.

### 8. Cash in the Sum of $1,450

The disputed amount of $1,450 concerned a car repair bill paid by Monge for purchase and installation of a rebuilt engine in Blair's pickup truck. The probate master found that Monge, who had occasionally used Blair's pickup truck, was driving the truck

in her "Objection to Master's Report."

when the replaced engine "blew up" and that the $1,450 was not a loan. Those findings are not clearly erroneous. Although the evidence on this dispute is sparse, it did not require a contrary finding.[8] The court did not err in concluding that Bowman failed to prove that the $1,450 Monge paid toward the repair of the truck was a loan.

### 9. Jewelry

The probate master found that Bowman withdrew her claim regarding the emerald necklace, rubies and diamond ring, and acknowledged that these items were not part of the estate. Bowman does not contest this finding.

### 10. Approximately 100 Compact Discs

The probate master found that Blair delivered fifty-five compact discs to Bowman. Although Bowman testified that Monge owned approximately one hundred compact discs and a friend of Monge testified that Monge owned approximately eighty compact discs, the probate master found that Bowman failed to provide a list of compact discs or any other evidence regarding specific or additional compact discs owned by Monge.[9] The probate master found that Blair had returned all of Monge's compact discs in her possession, but directed her that if she discovered the whereabouts of any more of Monge's compact discs, she was to deliver them to Bowman.

These findings are not clearly erroneous. Blair stated that there were approximately seventy compact discs, but that she owned a small portion of them. She testified that some compact discs were stolen from her car after Monge's death. Blair stated that she returned "what was left," approximately fifty or sixty compact discs, to Bowman. There was no evidence that Monge owned any other specific compact discs still possessed by Blair.

### 11. Cobra Car Alarm

■ The probate master's report erroneously states that Blair testified that Monge sold the Cobra car alarm system when he sold his Chevy Blazer in which the alarm was installed. As Blair herself pointed out to the superior court in her "Objection to Master's Report," Blair did not testify that the Cobra car alarm was sold with Monge's truck, but rather that Monge asked Blair to pick out a car alarm, purchased it and installed it in her truck in a manner which she perceived to indicate that the car alarm was a gift. She testified that he had sold *his* car alarm with his truck, but that was not the disputed Cobra car alarm system. Because the probate master's finding regarding the Cobra car alarm is clearly erroneous, we remand to the superior court for a determination of ownership of the Cobra car alarm which Monge purchased and installed in Blair's truck.

### C. Attorney's Fees

Bowman argues that the superior court erred in issuing its order awarding attorney's fees to Blair before ten days had elapsed after Blair filed her motion for attorney's fees. Bowman asserts that had she been given the opportunity to respond to the motion, she would have argued that (1) attorney's fees should have been denied in their entirety because Blair was not the prevailing

8. Bowman incorrectly asserts that the mechanic who installed the rebuilt engine "testified that Francisco loaned Crystal Blair that money to rebuild the engine of her truck and she was supposed to pay him back." The mechanic testified that Monge had paid $1,450 toward the repair bill and Blair later paid the balance of a "couple hundred dollars" when she picked up the truck. He did not testify that Monge's contribution was a loan. Exhibit 5, a typewritten statement signed by Spearman at some point prior to the hearing, was never admitted into evidence, and consequently was not considered by the master or the superior court and is not part of the record on appeal. The mechanic testified that he thought Monge had said he "would work out a deal" with Blair's father to work off their payments or whatever. Although that somewhat equivocal evidence would have supported finding by the probate master that Monge loaned Blair the money, it did not compel such a finding.

9. The probate master also noted that at the time of his death, Monge had been in the process of moving out of the Blairs' residence and had already removed some of his personal items, thus suggesting that Monge could have removed some of the compact discs himself.

party under Civil Rule 82, and (2) in the alternative, a smaller award should have been granted.

■ Pursuant to Civil Rules 82(c) and 77(c), parties opposing a motion for an award of attorney's fees must file such opposition within ten days after service of the motion. It is error for the court to rule on a motion for award of attorney's fees before the opposing party is given an opportunity to respond. *McGill v. Wahl,* 839 P.2d 393, 399 (Alaska 1992). The probate master erred in making his recommendation and the superior court erred in issuing its order before ten days had elapsed. Whether that error prejudiced Bowman or was harmless depends on whether, as a matter of law, Bowman could not have prevailed on the issue of attorney's fees.

■ Bowman argues that Blair was not the "prevailing party" in this matter. The "prevailing party" is the party who is successful with regard to the main issues in the action, even if the other party receives some affirmative recovery. *Alaska Placer Co. v. Lee,* 553 P.2d 54, 63 (Alaska 1976); *Cooper v. Carlson,* 511 P.2d 1305, 1308 (Alaska 1973). Clearly, Blair was the prevailing party here as she retained ownership of the majority of the disputed items. That result is not altered by the probate master's direction that Blair return certain disputed items to Bowman in the event Blair discovered them in her possession at a later date. The court necessarily found that Blair no longer possessed those items. As a matter of law, Bowman could not be considered the prevailing party.

Bowman also argues that the award was an abuse of discretion because the probate master considered Blair's pre-litigation attorney's fees and relied on the fact that the dispute required "extensive hearing time and accumulation of documents."

10. Although we have previously upheld awards of attorney's fees in excess of fifty percent based on such factors, that is not the relevant issue here. The superior court should have considered Bowman's argument at the time the award was made.

11. Bowman also argues that "the Probate Master Should Have Excused Himself" from the case

■ In cases where the prevailing party recovers no money judgment, Alaska Civil Rule 82 provides for award of attorney's fees based on a percentage of the party's "actual attorney's fees which are necessarily incurred." Alaska R.Civ.P. 82(b)(2).

Bowman incorrectly assumes that the trial court, in awarding partial fees, cannot consider fees incurred before formal litigation begins. All attorney's fees incurred in connection with litigation are not necessarily incurred after formal commencement of the litigation. It is within the trial court's discretion to consider a party's pre-litigation fees in determining the award. Blair's attorney submitted an affidavit stating that all of his listed hours were "spent in defending [Crystal] against the claim of Isabel Bowman...." Bowman offered no evidence otherwise and has not demonstrated that she could have offered contrary evidence if the court had not ruled prematurely. Thus, as a matter of law, Bowman could not have prevailed on this argument.

Nonetheless, Bowman may have been prejudiced by the probate master's and superior court's premature actions. In recommending that the court award Blair attorney's fees of $2,950, fifty percent of the fees actually incurred, the probate master cited the "extensive hearing time and accumulation of documents." Bowman argues that Blair was responsible for those factors. The superior court should have had an opportunity to consider that argument.[10] Thus, we cannot say that as a matter of law, Bowman was not prejudiced by the superior court's premature order awarding Blair $2,950 in attorney's fees.[11]

## IV. CONCLUSION

We AFFIRM the superior court's findings regarding all of the disputed items except for findings regarding the Cobra car alarm, because of an alleged "friendship between Master Duggan and [Bowman's] husband and their families." Because this issue was never raised below and the record is devoid of any reference to this issue, we will not consider it on appeal. *Adoption of F.H.,* 851 P.2d 1361, 1364 n. 4 (Alaska 1993); *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985).

which we REVERSE and REMAND for further findings consistent with our discussion above. We REMAND the issue of attorney's fees so that Bowman can be given the opportunity to oppose Blair's motion.