ALLIANCE OF CONCERNED
TAXPAYERS, INC.,
Appellant

v.

KENAI PENINSULA BOROUGH and
Kenai Peninsula Borough School
District, Appellees.

No. S–13594.

Supreme Court of Alaska.

April 6, 2012.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant.

Colette G. Thompson, Borough Attorney, Soldotna, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

In an October 2007 election, Kenai Peninsula Borough voters approved local initiatives

establishing term limits for members of the Borough Assembly and the school board. But voters also reelected five incumbents who, by the terms of the initiatives, would be ineligible to serve an additional term. The Alliance of Concerned Taxpayers (ACT) filed a lawsuit against the Borough requesting a court declaration that the initiatives applied to candidates chosen in the October 2007 election and that the seats held by the five incumbents were vacant. The Borough argued that the initiatives were invalid. The superior court granted partial summary judgment to ACT and partial summary judgment to the Borough and, therefore, did not designate either as the prevailing party. ACT appeals the superior court's decision not to name a prevailing party and argues that ACT should have been named the prevailing party. Because we conclude that ACT and the Borough both prevailed on distinct issues central to the case, we affirm the superior court's decision not to name a prevailing party or award attorney's fees and costs to either party.

ACT also contends that the local initiative power arises under the Alaska Constitution and that ACT is therefore a public interest litigant raising a constitutional issue and is entitled to full attorney's fees under AS 09.60.010(c). The same question is before us in a separate appeal involving the same parties. In that case, we reaffirm that the local initiative power is statutory and not constitutional in origin. We therefore conclude that ACT did not assert a constitutional right that would entitle it to attorney's fees under AS 09.60.010(c).

## II. FACTS AND PROCEEDINGS

### A. Facts

In the October 2, 2007 regular election,[1] Borough voters approved propositions establishing term limits for members of the Borough Assembly (Proposition 2) and the School Board (Proposition 3). The initiatives prohibited members of the assembly and school board who had served two consecutive terms in office from serving any part of an additional term until three years had passed from the end of the second term of service. In the same election, however, voters reelected five incumbent Borough officials whose reelection violated the terms of Propositions 2 or 3: three assembly members and two school board members. The Borough was faced with what the superior court described as a difficult choice: either to "carry out the will of the voters … who returned these candidates to office" or to "carry out the will of the voters in the areawide election that approved the … term limits restrictions on these candidates." The assembly and school board eventually decided to seat all of the incumbents.

### B. Proceedings

ACT filed a complaint requesting declaratory and injunctive relief on October 22, 2007. Specifically, ACT requested a declaration that (1) both initiatives applied to the October 2, 2007 election and (2) the five reelected incumbents were occupying their seats in violation of the term limits initiatives. ACT also requested full attorney's fees and costs.

The Borough asserted affirmative defenses and a counterclaim that focused on three main arguments: (1) Proposition 2 was invalid because Borough voters "lack the authority to impose limitations on the number of terms a school board member may serve"; (2) both initiatives were invalid as applied to candidates running in the same election; and (3) both initiatives were invalid in their entirety.

The Borough moved for summary judgment. First, the Borough argued that state law does not permit term limits for school board members because the State has authority over public education, and a municipality "cannot enact an ordinance which conflicts with a state education statute."[2] Although state statutes setting out qualifications for borough assembly members specifically authorize local adoption of term limits,

---

1. Although the superior court order identified the date of this election as October 7, a resolution certifying the election results indicates that it took place on October 2.

2. *Municipality of Anchorage v. Repasky,* 34 P.3d 302, 311 (Alaska 2001).

statutes setting out necessary qualifications for municipal school board members do not provide for term limits.[3] Second, the Borough contended that the initiatives violate voters' rights to select candidates of their choice and candidates' rights to run for and hold public office and to equal protection. The Borough emphasized that applying the initiatives to the October 2007 election results "would impose an even more severe burden on the fundamental rights to vote and to access the ballot." As the Borough noted, candidates for the 2007 election had declared their candidacy and voters had selected among them "without knowing whether the candidates would be subject to term limits." Applying the initiatives to disqualify the five reelected incumbents would, according to the Borough, allow voters in the area-wide election that approved the initiatives "to nullify other voters' selections of candidates in individual districts."

ACT filed a cross-motion for summary judgment. First, ACT contended that state law permits term limits for school board members because it permits term limits for those who serve as both assembly and school board members in boroughs where the public school population is 500 or fewer students.[4] Second, ACT argued that term limits are constitutional because they do not impermissibly burden voters' and candidates' rights and are tailored to serve a compelling government interest. Finally, ACT asserted that Borough voters "knew or should have known" that voting for the initiatives would affect the incumbent candidates' qualification for public office.[5]

The superior court issued an order on the cross-motions for summary judgment on August 14, 2008. The order granted summary judgment for the Borough in part and denied it in part. The superior court agreed with the Borough that state law does not permit term limits for school board members and therefore found Proposition 3 to be invalid. The superior court agreed with ACT that the initiatives did not unconstitutionally burden voters' and candidates' rights generally but also determined that the initiatives burdened those rights as applied to the 2007 election.[6] The superior court therefore severed the portion of Proposition 2 applying it to the 2007 election and concluded that it would apply to elections beginning in 2008.

Each party claimed that it was the prevailing party in the lawsuit and moved for attorney's fees. ACT argued that it was entitled to full attorney's fees under AS 09.60.010(c) because the lawsuit concerned "the establishment, protection, or enforcement" of a state constitutional right. The Borough, in turn, requested 20% of its actual attorney's fees under Rule 82.[7] Each party opposed the other's motion.

The superior court declined to name a prevailing party in the case. In an order dated July 28, 2009, the superior court explained that it found in favor of ACT by declaring Proposition 2 valid "on the grounds that [the Alaska Statutes] allowed local bodies to enact term limits" but in favor of the Borough by declaring Proposition 2 invalid as applied to the October 2007 election and by declaring Proposition 3 invalid "on the grounds that the power to regulate education

---

**3.** *Compare* AS 29.20.140(d) (authorizing local adoption of term limits for borough assembly members "by ordinance ratified by the voters"), *with* AS 14.12.030–.080 (setting out requirements for school boards and school board members and stating that "[n]othing in this section prevents school board members from succeeding themselves").

**4.** *See* AS 14.12.110 (allowing single body to serve as both assembly and school board); AS 29.20.140(d) (authorizing local adoption of term limits for borough assembly members "by ordinance ratified by the voters").

**5.** At least one newspaper article discussed the initiatives' possible effect on the five incumbents.

**6.** The superior court concluded that state interests in "encourag[ing] new qualified candidates and avoid[ing] entrenched incumbency" were compelling and that the initiatives were carefully tailored to achieve those objectives and did not restrict "an individual's right to vote and seek elective office so as to render [the initiatives] unconstitutional." However, the superior court ruled that applying Proposition 2 to the 2007 election would "nullify the voters' choices" and violate voters' rights provisions of the First and Fourteenth Amendments of the United States Constitution and article I, section 5 of the Alaska Constitution.

**7.** *See* Alaska R. Civ. P. 82(a)-(b).

rests with the [Alaska] Legislature." Because "each party prevailed on some issues and lost on others," the superior court concluded that "neither party could be truly characterized as the prevailing party" and ordered the parties to bear their own costs.

The parties do not appeal the substance of the superior court's ruling. ACT appeals the superior court's decision not to designate a prevailing party and not to award ACT attorney's fees and costs.

## III. STANDARD OF REVIEW

■ We review a trial court's determination of the prevailing party for purposes of awarding attorney's fees and costs for abuse of discretion.[8] We will overturn prevailing party determinations "only if they are manifestly unreasonable."[9]

## IV. DISCUSSION

ACT argues that it was an abuse of discretion for the superior court to decline to designate ACT as the prevailing party because it prevailed on the question whether term limits imposed on the members of the assembly were valid. ACT calls the validity of imposing term limits "the main issue in the case" and contends that the date on which those limits are imposed is insignificant. The Borough responds that this case involved at least three issues: (1) the constitutional validity of the term limits imposed by these initiatives; (2) the statutory validity of term limits for members of the school board; and (3) the applicability of any valid term limits on officials elected simultaneously with enactment of the initiatives. The Borough argues that because it prevailed on two of the three issues, the superior court's decision not to designate a prevailing party was reasonable. We agree.

■ A prevailing party is "one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention."[10] But when both parties prevail on main issues, the superior court may also opt not to designate a prevailing party.[11] We have explained that "where each party has prevailed on a main issue the court retains discretion to refrain from characterizing either as the prevailing party, and a denial of attorney costs and fees in such instances is appropriate."[12]

■ The central question, therefore, is whether the three issues identified by the superior court constitute "main issues." We conclude that they do. The superior court made three legal rulings regarding the term limits initiatives: first, that term limits for school board members are prohibited by statute; second, that term limits for assembly members are not prohibited by the constitution; and third, that it would nonetheless be unconstitutional to apply term limits for assembly members to the results of the October 2007 election.

The superior court's first ruling concerned ACT's argument that Proposition 3 "amend[ed] the Borough Code to prohibit anyone from serving more than two consecutive terms on ... the Borough School Board." In their cross-motions for summary judgment, the Borough and ACT debated whether the Alaska Statutes permitted term limits for school board members. In its order, the superior court analyzed AS 14.12.030–.115, which concern school boards within the state, and AS 29.20.140(a), which permit term limits for assembly members, together. Based on this analysis, it concluded that Proposition 3 was invalid.

8. *Hutchins v. Schwartz,* 724 P.2d 1194, 1204 (Alaska 1986).

9. *Progressive Corp. v. Peter ex rel. Peter,* 195 P.3d 1083, 1092 (Alaska 2008) (citing *Interior Cabaret, Hotel Rest. & Retailers Ass'n v. Fairbanks N. Star Borough,* 135 P.3d 1000, 1002 (Alaska 2006)).

10. *K & K Recycling, Inc. v. Alaska Gold Co.,* 80 P.3d 702, 721 (Alaska 2003) (quoting *Tobeluk v. Lind,* 589 P.2d 873, 876 (Alaska 1979)); *see also Progressive Corp.,* 195 P.3d at 1092 ("A plaintiff may prevail even if he or she fails to recover all the relief prayed for.").

11. *See Fernandes v. Portwine,* 56 P.3d 1, 7–8 (Alaska 2002) (holding that the superior court's decision not to designate a prevailing party was "reasonable" and therefore not an abuse of discretion where both parties "prevailed on some issues and lost on others").

12. *Tobeluk,* 589 P.2d at 877 (citing *City of Valdez v. Valdez Dev. Co.,* 523 P.2d 177, 184 (Alaska 1974)); *see also Fernandes,* 56 P.3d at 3–4, 7–8 (upholding superior court's decision not to designate a prevailing party or award monetary damages to either party).

The superior court's second ruling evaluated ACT's argument that Proposition 2 "amend[ed] the Borough Code to prohibit anyone from serving more than two consecutive terms on ... the Borough Assembly." The parties' motions for summary judgment considered whether the initiatives' provisions for term limits unconstitutionally burdened voters' rights to vote for the candidates of their choice and candidates' rights to run for and hold public office and to equal protection. Because the superior court had already concluded that Proposition 3 was invalid, it considered this argument as applied to Proposition 2 only. The superior court identified the rights affected by term limits for assembly members as fundamental, but determined that the State's interests in "encourag[ing] new qualified candidates and avoid[ing] entrenched incumbency" were compelling. The court concluded that Proposition 2 did not completely bar individuals' further candidacy or significantly limit ballot access and was therefore sufficiently narrowly tailored and did not "unconstitutionally infringe upon the rights of voters or candidates running for office."

The third ruling concerned the related question whether Proposition 2 applied to the October 2007 election. In its complaint and motion for summary judgment, ACT had requested a declaration that both initiatives applied to the October 2007 election and that the seats held by the five incumbents were vacant. In support, ACT suggested that Borough voters "knew or should have known" that votes for the initiatives would affect the five incumbents' races. The Borough responded that application of the initiatives to the October 2007 election would "further compound[ ]" the burden on voters' and candidates' rights and that such application would require an especially close relationship between the initiative and the governmental interest to be achieved. In its order, the superior court concluded that application of Proposition 2 to the October 2007 election would be unconstitutional and ultimately severed the year "2007" from Proposition 2.

We conclude that these three issues can all be fairly considered main issues in this case. ACT now argues that the sole main issue was "the constitutional right to impose term limits on the Kenai Peninsula Borough Assembly." But it is more proper to characterize this issue as a dispute regarding the legality of both initiatives—concerning school board and assembly members—because ACT's initial complaint sought a declaration that both initiatives were valid and applicable to the October 2007 election. Indeed, ACT filed its complaint after the incumbent school board members were seated but before the incumbent assembly members were seated. As ACT explained, it was concerned that the school board had already seated its reelected members and that the assembly "may seat" its reelected members. The timing and language of ACT's complaint indicate the legality of term limits for school board members was as significant an issue as term limits for assembly members.[13]

The applicability of these initiatives to the October 2007 election was also an important component of this case. As the superior court acknowledged, the Borough faced a difficult choice in deciding whether or not to seat the reelected incumbents. ACT's complaint specifically requested that the seats filled by the five reelected incumbents be declared vacant. The applicability of the initiatives to the October 2007 election was therefore a main issue in this case.

All three issues were decided on distinct legal grounds.[14] The superior court determined the validity of Proposition 3 based upon its interpretation of the Alaska Statutes. It determined the validity of Proposition 2, both generally and as applied to the October 2007 election, based upon different applications of this court's constitutional balancing test. Because ACT succeeded on the question whether Proposition 2 was valid, and the Borough succeeded on the questions whether Proposition 2 applied to the October 2007 election and whether Proposition 3 was

---

**13.** See *Taylor v. Moutrie–Pelham,* 246 P.3d 927, 929 (Alaska 2011) (concluding that a party's raising of an issue in his complaint could reasonably lead superior court to conclude that issue was "a 'main issue' in [the] case and not just a peripheral one").

**14.** Cf. *Tobeluk,* 589 P.2d at 878 (upholding superior court's decision not to name a prevailing party where it "is unclear whether either party won on any of the legal issues").

valid, we conclude that the superior court's decision that neither party was the prevailing party is reasonable and therefore not an abuse of discretion.

ACT also argues that the right of local citizens to legislate by initiative originates in the Alaska Constitution and, therefore, that ACT is entitled to attorney's fees and costs as a prevailing litigant asserting a constitutional right.[15] As we reaffirm in a separate appeal involving the same parties, the local initiative power is statutory and not constitutional in origin.[16] Thus, ACT did not assert a constitutional right that would entitle it to attorney's fees under AS 09.60.010(c).

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's decision not to name a prevailing party.

CHRISTEN, Justice, not participating.

---

**15.** AS 09.60.010(c) provides, in relevant part:
In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court
(1) shall award ... full reasonable attorney fees and costs to a claimant, who ... has prevailed in asserting the right;

(2) may not order a claimant [who has not prevailed] to pay the attorney fees of the opposing party...."

**16.** *Alliance of Concerned Taxpayers v. Kenai Peninsula Borough* (*ACT II & III*), 273 P.3d 1128, —— (Alaska 2012).