Andree McLEOD, Appellant,

v.

Sean PARNELL, in his official capacity as Governor, and State of Alaska, Office of the Governor, Appellees.

No. S–13861.

Supreme Court of Alaska.

Oct. 12, 2012.

Rehearing Denied Dec. 18, 2012.

Donald Craig Mitchell, Anchorage, for Appellant.

Laura Fox, Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellees.

Before: CARPENETI, Chief Justice, FABE and WINFREE, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

We are asked to consider two narrow legal questions arising from the Alaska Records Management Act[1] and the Alaska Public Records Act:[2] (1) when state employees use private email accounts to send and receive email regarding state business, are the emails "public records" under the Public Records Act, and (2) is the use of a private email account to send and receive email regarding state business a per se violation of the Public Records Act's prohibition against obstruction of public access to "public records"? Our answers are: (1) private emails regarding state business are no different from any other records—those records preserved or appropriate for preservation under the Records Management Act are "public records" under the Public Records Act; and

---

1. AS 40.21.010–.150.

2. AS 40.25.100–.350.

(2) the use of private email accounts to conduct state business, alone, is not per se obstruction of access to "public records" under the Public Records Act.

## II. FACTS AND PROCEEDINGS

State of Alaska employees are issued government email accounts for conducting state business. All emails sent or received through government email addresses pass through the state's computer servers and are captured and reviewed for archiving according to the Records Management Act.[3]

In September 2008 it became generally known that then-Governor Sarah Palin and other Office of the Governor employees used personal email accounts to conduct state business. Later, 24 of the 141 Governor's Office employees "indicated that to some extent, they ... [had] used private [email] accounts to send or receive [emails] that in some way relate to or touch on state business." The use of private email accounts varied—many used private email accounts "primarily to send materials from office to home or home to office," while others, including Governor Palin, used private email accounts for "[g]eneral communication [regarding] state business." Email sent solely between private email accounts does not pass through the state's capturing system and is not reviewed for archiving in the normal course of business.

On October 1, 2008, Andree McLeod submitted a Public Records Act request to the Governor's Office seeking, among other things, (1) copies of "[e]very email that ... was sent to or from" Governor Palin and her husband Todd Palin's private email accounts since December 4, 2006, "if the subject of the email involves, or is in any way related to, the conduct of official business of the State of Alaska," and (2) any and all public records relating to the collection or preservation of public records by the Governor's Office, including the preservation of the requested email.[4] The same day McLeod filed a complaint in superior court alleging violations of the Public Records Act.[5] She sought a declar-

---

3. The Records Management Act creates the framework and procedures for the state archivist and chief executive officers of state agencies to acquire and preserve public records. *See* AS 40.21.010–.150. Although the Act does not define "public record," "record" is broadly defined, in relevant part, as:

    [A]ny document, paper, book, letter, drawing, map, plat, photo, photographic file, motion picture film, microfilm, microphotograph, exhibit, magnetic or paper tape, punched card, electronic record, or other document of any other material, regardless of physical form or characteristic, developed or received under law or in connection with the transaction of official business and preserved or appropriate for preservation by an agency or a political subdivision, as evidence of the organization, function, policies, decisions, procedures, operations, or other activities of the state or political subdivision or because of the informational value in them[.]

    AS 40.21.150(6).

    The Act instructs chief executive officers of state agencies to "preserve public records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency, and designed to furnish the information necessary to protect the legal and financial rights of the state and of persons directly affected by the agency's activities." AS 40.21.060(1). These officers must also create retention schedules outlining how long each record must be maintained based on standards set forth by the

state archivist. AS 40.21.030(b)(10), .060(3). Record retention schedules follow the General Administrative Records Retention Schedule (GARRS) created by the state archivist based on the Records Management Act's preservation requirements. *See* AS 40.21.030, .060.

Relevant to this case, the 2005 GARRS defines non-record email, which may be destroyed immediately, as "transitory [email] which is primarily generated for informal communication of information that does not perpetuate or formalize knowledge."

4. The Public Records Act states, in relevant part, "[u]nless specifically provided otherwise, the public records of all public agencies are open to inspection by the public." AS 40.25.110(a).

    In 1990 the legislature added an express definition of "public records":

    [B]ooks, papers, files, accounts, writings, including drafts and memorializations of conversations, and other items, regardless of format or physical characteristics, that are developed or received by a public agency, or by a private contractor for a public agency, *and that are preserved for their informational value or as evidence of the organization or operation of the public agency;* "public records" does not include proprietary software programs.

    AS 40.25.220(3) (emphasis added); *see* Ch. 200, § 8, SLA 1990.

5. McLeod's allegations included: (1) Governor Palin and other members of the Governor's Of-

atory judgment that each requested email was a "public record" and an injunction compelling Governor Palin and the Governor's Office to: (1) preserve all requested email consistent with the Records Management Act; (2) stop using private email accounts to conduct official business; and (3) retrieve requested email manually or automatically deleted from those accounts.[6] McLeod amended her complaint on October 8, 2008, to also allege Records Management Act violations.

On October 10, 2008, the superior court issued a temporary restraining order and preliminary injunction requiring Governor Palin and the Governor's Office to (1) "preserve all emails (including attachments thereto) sent . . . to or from Governor Palin on any and all of Governor Palin's private email accounts whose content relates in any way to the conduct of official business"; (2) "preserve all emails (including attachments thereto) sent . . . to or from the private email accounts of every employee of the Office of the Governor whose content relates in any way to the conduct of official business"; and (3) attempt to retrieve email relating to official business sent to or from Governor Palin's or Governor's Office employees' private email accounts that were intentionally or automatically deleted by internet companies.

In response to court orders, the Governor's Office filed reports regarding private email usage by Governor Palin and other Governor's Office employees. The Governor's Office also described the steps taken to preserve all of Governor Palin's (and others') still-existing email from the private email accounts used for state business. The Governor's Office represented that the recovered email would be reviewed and that email relating to state business would be collected and made available for public record requests.

Each party filed a motion for summary judgment. McLeod's motion was denied in August 2009. The superior court granted the State's motion in January 2010, which it clarified in a March 2010 "denial" of McLeod's reconsideration motion. Although the denial upheld the summary judgment award against McLeod, she gained an important clarification of the law that favored her position. The court ultimately concluded that based on its interpretation of the Public Record and Records Management Acts, McLeod was not entitled to the declaratory and injunctive relief she sought. The court terminated the preliminary injunction that it had granted earlier and later dismissed the lawsuit.

McLeod appeals the grant of summary judgment in favor of the State.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[7] The decision "will be affirmed if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law." [8] We apply our independent judgment in matters of statutory interpretation.[9] We "interpret the statute in question by looking to the meaning of the statute's language, its legislative history, and its purpose." [10]

---

fice's use of private email accounts to conduct state business "has compromised the ability of the State of Alaska to comply with" the Public Records Act; (2) Todd Palin "has routinely attempted to influence the conduct of official business of the State of Alaska by [using private email accounts to email Governor Palin] thereby circumventing the Public Records Act"; (3) Governor Palin's use of private email accounts to conduct state business "threatens the integrity and preservation of public records" through routine deletions; and (4) Governor Palin and other employees of the Governor's Office intentionally used private email to conduct state business to protect the communications from disclosure under the Public Records Act.

6. The Public Records Act contains an enforcement provision allowing members of the public

to seek injunctive relief against "[a] person having custody or control of a public record who denies, obstructs, or attempts to obstruct . . . the inspection of a public record." AS 40.25.125.

7. *Hageland Aviation Servs., Inc. v. Harms,* 210 P.3d 444, 447 (Alaska 2009).

8. *Olivit v. City & Borough of Juneau,* 171 P.3d 1137, 1142 (Alaska 2007).

9. *Hageland Aviation Servs., Inc.,* 210 P.3d at 448.

10. *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Progressive Cas. Ins. Co.,* 165 P.3d 624, 628 (Alaska 2007).

## IV. DISCUSSION

### A. Issues Remaining On Appeal

McLeod succinctly described to the superior court the primary thrust of her lawsuit:

> Plaintiff McLeod filed this action for two narrow purposes. First, to establish that an email that a state employee sends or receives on his or her private email account (rather than on his or her State of Alaska email account) and whose content involves the transaction of official state business is a "public record" for the purposes of the Public Records Act and a public "record" for the purposes of the Records Management Act. And second, to establish that using private email accounts to create ... "public records" is a *per se* violation of [the Public Records Act], which prohibits the "obstruction" of the public's right to inspect "public records."

In its January 2010 summary judgment order, the superior court ruled: (1) not every email referring to state business is necessarily a "public record"; (2) there is no duty to preserve "non-record" email under the Records Management Act[11] and there is "an element of discretion" in deciding which emails to preserve; (3) records, including email, that have been preserved are "public records"; (4) using private email accounts to conduct state business is not per se obstruction of access to "public records"; and (5) state employees who deliberately do not preserve records that should be preserved under the Records Management Act might violate the law.

McLeod moved for reconsideration, arguing the court's order "gut[ted] ... the entire Public Records and Records Management Acts" by allowing an agency to decide whether to "preserve" a record for public inspection (emphasis omitted). McLeod maintained that a record appropriate for preservation under the Records Management Act should also be considered a public record under the Public Records Act. McLeod noted that the State was "continuing to pro-

cess" McLeod's public records request, thus demonstrating that the State considered at least some of the email in question to be public records.

In March 2010 the superior court denied McLeod's reconsideration motion. But in its denial, the superior court expressed agreement with McLeod's position that documents *appropriate for preservation* are public records under the Public Records Act. In addition, the court strengthened its language concerning deliberate non-preservation, stating:

> Any state employee who deliberately hides such emails is violating state law, but that may be the subject of another dispute as this issue was not raised in the limited scope of McLeod's amended complaint and the Court has no admissible evidence of such abuses before it.[12]

We interpret the superior court's March 2010 denial of McLeod's reconsideration motion as a clarification of its January 2010 order in direct response to McLeod's critique of that order, even though summary judgment in favor of the State remained in place rejecting McLeod's claim that all emails touching on state business are public records.

On March 12, 2010, the defendants moved for entry of final judgment and for attorney's fees. McLeod opposed the attorney's fees motion as premature and sought to stay it pending entry of a final judgment and a potential decision on appeal, but did not contest the entry of final judgment. McLeod conceded that if she did not appeal the merits of the superior court's decision, or if she appealed and lost, the defendants would be the prevailing party for an award of attorney's fees. On April 15, 2010, the superior court entered an attorney's fee award in the State's favor and final judgment against McLeod.

McLeod raises two points on appeal, generally mirroring the narrow issues resolved in the superior court summary judgment proceedings. First, she asserts that the superior court erred in its January 2010 order by interpreting the Public Records Act to limit

---

11. *See supra* note 3.

12. McLeod did not move for reconsideration of this aspect of the court's March 2, 2010 order,

nor did she seek to amend her complaint to expand her allegations.

"public records" to those records that have been preserved; the tenor of her brief implies she believes the superior court's March 2010 denial of her reconsideration motion left the January 2010 order in place and unclarified. Second, she asserts that the superior court erred in interpreting the Public Records Act as not prohibiting the use of private email accounts to conduct state business. But McLeod does not otherwise challenge the superior court's termination of the preliminary injunction, its entry of final judgment after the summary judgment ruling, its determination that the State was the prevailing party for an award of attorney's fees, or its attorney's fees award.

### B. For The Purposes Of The Public Records Act, The Term "Public Records" Includes Those Records "Appropriate For Preservation."

■ The Public Records Act defines "public records," in relevant part, as those "preserved for their informational value or as evidence of the organization or operation of the public agency." [13] McLeod argues that a literal interpretation of this definition leads to an absurd result because "it grants 'elected and appointed officials' authority to ... simply, and quite privately, decid[e] not to 'preserve' a record that, for whatever reason—including avoiding political embarrassment or because the record is evidence of mis or malfeasance—they do not want the public to see." McLeod further contends that a literal reading "produces a result in which an ... item is a 'record' for the purposes of the Records Management Act because its content is 'appropriate for preservation,' but the item is not a 'public record' for the purposes of the Public Records Act" because no public agency has decided to "preserve" it.[14] McLeod concludes that this "anomaly" is best eliminated by interpreting the Public Records Act to require agencies to preserve documents that are appropriate for preservation, the same approach the superior court adopted in its March 2010 reconsideration denial.

■ When interpreting a statute, we look "to the legislature's intent, with due regard for the meaning the statutory language conveys to others." [15] "[W]here the literal interpretation of a statute would lead to absurd results, courts can interpret the words of the statute to agree with the intention of the legislature." [16] Here the literal interpretation of the Public Records Act's text suggests the legislature intended "preservation" to be an additional step for a document to become a public record. In a colloquy with Senator Al Adams concerning the scope of the proposed changes, Representative Kay Brown, the 1990 amendment's sponsor, indicated that "you can't save every scrap of paper. At some point, [judgment] is exercised as to what is proper and needs to be preserved." [17] Allowing agency employees to choose not to preserve a document is not absurd because, as the State notes, "each state agency has the best understanding of the preservation value of its own documents."

But we agree with the superior court's conclusion in its denial of McLeod's motion for reconsideration: Records "that *should* be preserved are also public records, notwithstanding the fact that they may be difficult or impossible to access." [18] As McLeod argued to the superior court and argues on appeal, this interpretation is necessary to

---

13. AS 40.25.220(3).

14. *Compare id.* (defining "public record"), *with* AS 40.21.150(6) (defining "record").

15. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 905 (Alaska 1987) (citing *State v. Alex,* 646 P.2d 203, 208 & n. 4 (Alaska 1982)).

16. *Brooks Range Exploration Co. v. Gordon,* 46 P.3d 942, 945–46 (Alaska 2002).

17. Minutes, Sen. State Affairs Comm. Hearing on H.B. 405, 16th Leg., 2d Sess. (Apr. 18, 1990).

18. McLeod argues that this conclusion is inconsistent with the superior court's earlier January 2010 statement that "[t]here is an element of discretion, and if the Governor and her staff chose not to preserve certain emails—for whatever reason and regardless of intention—those emails are not public records." Perhaps the court's titling of the March 2010 order as a "denial" of McLeod's reconsideration motion led her to conclude that the unclarified January 2010 order controlled. As noted earlier, the denial of McLeod's reconsideration motion substantially modified the January 2010 decision.

avoid an inconsistency with the Record Management Act's definition of "records," under which a document appropriate for preservation could be a record—thereby requiring its preservation—but not a "public record" under the Public Records Act.

▪ We therefore affirm the superior court's ultimate interpretation of "public record": State agency records preserved or appropriate for preservation under the Records Management Act are public records subject to review under the Public Records Act. But not every record a state employee creates, and certainly not every state employee email, is necessarily appropriate for preservation under the Records Management Act.

### C. Use Of Private Email Accounts To Conduct State Business Is Not A Per Se Violation Of The Public Records Act.

▪ The Public Records Act states that "[a] person having custody or control of a public record who ... obstructs, or attempts to obstruct ... the inspection of a public record subject to inspection under [the Act] may be enjoined by the superior court."[19] McLeod assumes that some privately sent emails are public records and contends that the superior court erred in holding "there is simply no current statute that forbids the use of private email accounts to conduct state business." McLeod argues that a state employee's use of private email accounts to conduct official business is "a *per se* 'obstruction' of the right to public inspection," because conducting official business in this way prevents the public from discovering that the emails exist. (Emphasis in original.)

We agree with the State that using private email accounts is no more an obstruction of access to public records than communicating through paper letters. As the superior court

noted, the law requires a state employee to retain records; whether the record exists in paper or electronic form does not change the analysis. Thus using private email accounts for conducting state business, alone, does not constitute an "obstruction" of access to public records under the Public Records Act.

We therefore affirm the superior court's interpretation of the Public Records Act—the use of private email accounts to conduct state business is not a per se violation of the Act's proscription against obstructing public records inspection. We emphasize the narrowness of the legal issue decided by the superior court and affirmed here: This appeal does not present questions that might arise from a determination that state employees used private email accounts to conduct state business outside of the state's record preservation system and deliberately failed to preserve email appropriate for preservation for public record review. McLeod did not pursue answers to such questions in the superior court and did not raise such questions in her appeal.[20]

### D. McLeod Was Entitled To Partial Summary Judgment.

▪ "We will affirm a grant of summary judgment if there are no genuine issues of material fact and the prevailing party was entitled to judgment as a matter of law."[21] McLeod first sought a declaration that "*[e]very* email" from the governor's office accounts and "*[e]very* email" from the Palins' private accounts that "in any way" related to state business was a public record. (Emphasis added.) Second, she sought a declaration that using private email accounts to create "public records" is a per se violation of the Public Records Act. The State, for its part, adopted a similarly extreme position in the opposite direction: It suggested that, under

---

19. AS 40.25.125.

20. We note that as of oral argument before us McLeod still had an active Public Records Act request for the Governor's Office emails at issue in this appeal. The State represented that it has gathered all obtainable emails from Governor Palin's and others' private email accounts relating to the conduct of state business, and that it was processing those emails to respond to McLeod's request to review any public records

among those emails. It subsequently released thousands of emails. Any further disputes between McLeod and the State regarding her Public Records Act request may be taken up in different proceedings.

21. *Cragle v. Gray*, 206 P.3d 446, 449 (Alaska 2009) (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

the applicable definition, the mere failure of the State to preserve a given record established that it was not a state record. At first, the superior court accepted the State's extreme position. It concluded that "[t]here is an element of discretion, and if the Governor and her staff chose not to preserve certain emails—for whatever reason and regardless of intention—those emails are not public records, and are not available for [public] inspection."

Upon reconsideration, however, the superior court significantly withdrew from its earlier position and instead concluded that "if a state employee deliberately does not preserve a document that is 'appropriate for preservation' . . . that employee is breaking the law." In doing so, the court handed McLeod an important and substantial victory, rebutting the State's contentions that any records it failed to preserve were not "public records" because records "appropriate for preservation," whether or not originally preserved by the State, were also incorporated in the court's definition of "public records." Thus, the State was not entitled to summary judgment on that issue because McLeod established that the duty to preserve emails exists as to both official accounts and private accounts, and that the duty cannot be extinguished by a public official's unreviewable decision simply not to preserve them. McLeod did not seek this limited relief, she sought a much broader declaration; however, a grant of summary judgment is not an all or nothing proposition.[22]

The court's revised interpretation effects a substantive change in the interpretation of the statute and demonstrates that McLeod achieved a substantial measure of success: In fact the State had to gather all obtainable emails from Governor Palin's and others' private email accounts relating to the transaction of state business and process them to respond to McLeod's request to review any

public records among those emails. Consequently, McLeod was entitled to a grant of partial summary judgment.

### E. The Issue Of Attorney's Fees Must Be Remanded To The Superior Court.

On March 12, 2010, the State moved for attorney's fees, claiming that the superior court's denial of McLeod's motion for reconsideration effectively terminated the litigation and left the State as the prevailing party. The State cited *Bowman v. Blair*[23] to support its "prevailing party" status, noting that "[t]he 'prevailing party' is the party who is successful with regard to the main issues in the action, even if the other party receives some affirmative recovery."[24] The State asserted that it prevailed by

> refuting [McLeod's] arguments for expansive injunctive relief in October–November 2008, defeating her motion for summary judgment in January–February 2009 and her motion for reconsideration of the court's order denying her motion for summary judgment in September 2009, successfully moving for summary judgment in November–December 2009, and defeating her motion for reconsideration of the order granting [the State's] motion for summary judgment in February 2010.

Accordingly, it asked the court to award Alaska Civil Rule 82 attorney's fees in the amount of $6,645.

McLeod opposed the attorney's fees motion as premature and sought to stay it pending entry of a final judgment and a potential decision on appeal. McLeod also argued that even if the State was entitled to Rule 82 fees, two factors in subsection (b)(3) applied in this case and warranted varying or completely eliminating an award of fees against her. McLeod identified the two relevant factors from Rule 82(b)(3) as "the extent to which a given fee award may be so onerous

---

**22.** *See, e.g., Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1123 (Alaska 2012) (affirming superior court's grant of partial summary judgment to each party and decision not to designate a prevailing party).

**23.** 889 P.2d 1069 (Alaska 1995).

**24.** *Id.* at 1075 (citing *Alaska Placer Co. v. Lee*, 553 P.2d 54, 63 (Alaska 1976); *Cooper v. Carlson*, 511 P.2d 1305, 1308 (Alaska 1973)); *see also Day v. Moore*, 771 P.2d 436, 437 (Alaska 1989) ("One who defeats a claim of great potential liability may be the prevailing party even though the other side receives an affirmative recovery.").

to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts," a section meant to shield public interest litigants from punitive fee awards after a separate statutory exception was eliminated in 2003, and "other equitable factors deemed relevant."

On April 15, 2010, the superior court entered an attorney's fee award for the full amount requested by the State.

In order to determine which party was "successful with regard to the main issues in the action," it is necessary to look at what relief each party sought below.[25] Because we have reversed that portion of the superior court's judgment granting full summary judgment to the state and have concluded that McLeod was entitled to partial summary judgment, we remand the issue of attorney's fees to the superior court for a redetermination of attorney's fees consistent with this ruling.[26]

**25.** *Bowman*, 889 P.2d at 1075.

**26.** *See Tobeluk v. Lind*, 589 P.2d 873, 877 (Alaska 1979) ("Although the prevailing party is the party who prevails on the suit as a whole, where each party has prevailed on a main issue the court retains discretion to refrain from characterizing

## V. CONCLUSION

We AFFIRM the judgment of the superior court that use of private email accounts to conduct state business is not a per se violation of the Public Records Act, but we partially REVERSE the superior court's grant of summary judgment to the State, holding that its conclusion that the term "public records" includes those records "appropriate for preservation" entitles McLeod to partial summary judgment. Thus, we REMAND for the trial court to redetermine the prevailing party and attorney's fees.

CHRISTEN and STOWERS, Justices, not participating.

either as the prevailing party, and a denial of attorney costs and fees in such instances is appropriate." (citing *Fairbanks Builders, Inc. v. Sandstrom Plumbing & Heating, Inc.*, 555 P.2d 964, 967 (Alaska 1976); *City of Valdez v. Valdez Dev. Co.*, 523 P.2d 177, 184 (Alaska 1974))).